## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| PACKABLE HOLDINGS, LLC F/K/A ENTOURAGE COMMERCE, LLC, *et al.*,[1] | Case No. 22-_____ (___) |
| Debtors. | (Joint Administration Requested) |

## DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING USE OF CASH COLLATERAL AND AFFORDING ADEQUATE PROTECTION; (II) MODIFYING AUTOMATIC STAY; (III) SCHEDULING A FINAL HEARING; AND (IV) GRANTING RELATED RELIEF

By this motion (the "Motion"), the above-captioned debtors and debtors in possession (the "Debtors") move the Court for the entry of an order, in substantially the form attached hereto as **Exhibit A** (the "Interim Order"), and a final order (the "Final Order", and together with the Interim Order, collectively, the "Cash Collateral Orders"), pursuant to sections 105, 361, 362, 363, 503 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1(b), 4001-2 and 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), *inter alia*: (a) authorizing the Debtors' use of Cash Collateral (as defined below); (b) granting adequate protection to the Prepetition Secured Parties (as defined below) for any diminution in value occurring from and after the Petition Date of its interests in the Prepetition Collateral (as defined below) as of the Petition Date, including the Cash Collateral; and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: Packable Holdings, LLC (6932); Greenpharm Ventures LLC (1513); Packable Media, LLC (6006); Pharmapacks, LLC (6676); Packable Ventures, LLC (1172); and Access Brands, LLC (8582). The location of the Debtors' service address in these chapter 11 cases is 1985 Marcus Avenue, Suite 207, Lake Success, NY 11042.

(c) granting related relief. In support of this Motion, the Debtors rely upon and incorporate by reference the *Declaration of Brian Teets in Support of the Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"),[2] which is being filed concurrently herewith and is incorporated by reference herein.  In further support of this Motion, the Debtors, by and through their undersigned proposed counsel, respectfully represent:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The legal predicates for the relief requested herein are sections 105, 361, 362, 363, 503 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004 and 9014, and Local Rules 2002-1(b), 4001-2 and 9013-1(m).

3.      Pursuant to Rule 9013-1(f) of the Local Rules, the Debtors confirm their consent to the entry of a final order or judgment by the Court with respect to this Motion if it is determined that this Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.

## BACKGROUND

4.      On the date hereof (the "Petition Date"), the Debtors commenced these chapter 11 cases by filing petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11

---

[2]      Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the First Day Declaration.

Cases"). The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

5. To date, no creditors' committee has been appointed in the Chapter 11 Cases by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"). No trustee or examiner has been appointed in these Chapter 11 Cases.

6. Founded in 2010, Packable Holdings, LLC ("Holdings"), together with its affiliated debtors, debtors in possession, and affiliated non-debtors (collectively, "Packable"), is a privately-owned tech-enabled e-commerce company with its principal place of business in Hauppauge, New York. Packable operates as a third-party seller of health and beauty products on online marketplaces in North America.

7. As is further discussed in the First Day Declaration, the Debtors commenced these Chapter 11 Cases to effectuate a sale of the Debtors' assets pursuant to a Court-approved liquidation process.

8. A detailed description of the Debtors, including their business operations, their corporate and capital structure, the events leading to the commencement of the Chapter 11 Cases, and the facts and circumstances supporting this Motion, are set forth in greater detail in the First Day Declaration and incorporated by reference herein.

## FACTS RELEVANT TO THIS MOTION

### A. The ABL Facility

9. Debtors Holdings and Pharmapacks, LLC ("Pharmapacks") are borrowers under that certain Credit Agreement, dated as of July 24, 2020 (as amended, supplemented, or otherwise modified, the "ABL Credit Agreement") by and among Holdings and Pharmapacks, JPMorgan Chase Bank, N.A. (the "ABL Agent") as agent and lender, and the additional lenders from time to time party thereto (the "ABL Lenders" and, together with the ABL Agent, the "ABL Secured

Parties"), pursuant to which the ABL Lenders revolving credit loans, and other financial accommodations to, and issued letters of credit for the account of, the Prepetition ABL Borrowers (the "ABL Facility") in an aggregate principal amount not to exceed $60 million (as of the Petition Date), with availability based on the value of certain of the Debtors' accounts receivable and inventory, less certain offsets, reserves, and availability blocks. The ABL Facility matures on January 15, 2023.

10. Borrowings under the ABL Facility bear interest at a rate per annum equal to the 30-day LIBOR, with a 0.25% rate floor, plus 3%. The ABL Borrowers are also required to pay a commitment fee that accrues at a rate of 0.50% per annum on the average daily amount of the available revolving commitment during the period from the facility effective date to the day before the revolving commitments terminate.

11. All obligations under the ABL Facility are guaranteed on a senior secured first-lien basis by each of Packable's wholly owned domestic subsidiaries. Pursuant to that certain Pledge and Security agreement dated as of July 24, 2020 (the "ABL Security Agreement"), the ABL Facility is secured by first priority security interests in and liens on the "Collateral" (as defined in the ABL Security Agreement) (the "Prepetition Collateral"), which is comprised of substantially all of the Debtors' assets, including intellectual property. In addition, the ABL Lenders have cash dominion over Packable's operating accounts and, in specified circumstances, over its investment account.

12. On April 14, 2022, contemporaneously with the closing of the Term Loan Facility (defined below), the ABL Lenders and Packable entered into a forbearance agreement (the "ABL Forbearance Agreement") to address certain defaults by Packable and an agreed-upon forbearance by the ABL Lenders. The ABL Forbearance Agreement required Packable to maintain minimum

liquidity of at least $10 million at all times, and to deposit cash into a restricted cash account to cure any deficiency in the borrowing base in the event the borrowing base fell below $47 million. The ABL Forbearance Agreement further provided (among other termination events) that it would terminate if Packable failed to raise at least $65.0 million in net tranche B Term Loan Facility proceeds by July 15, 2022.

13.     The discretionary net tranche B Term Loan Facility proceeds did not materialize. In light of this additional default, on July 21, 2022, contemporaneously with the closing of the Bridge Facility (defined below), the ABL Lenders and Packable entered into an amended ABL Forbearance Agreement (the "Amended Forbearance Agreement"). The Amended Forbearance Agreement retroactively extended the term of the forbearance through August 1, 2022, and provided (among other termination events) that it would terminate automatically if Packable failed to consummate an anticipated permanent refinancing transaction with a third party and repay the ABL Facility by August 1, 2022, or if that third party failed to obtain internal credit approval to consummate such a transaction by 9:00 a.m. (Eastern) on July 29, 2022 (the "Credit Approval Termination Event"). The Amended Forbearance Agreement also required Packable to solicit bids for the purchase of all of Packable's assets by July 25, 2022, and to request that such bids be provided by July 29, 2022.

14.     As of July 29, 2022, the potential third party purchaser had not obtained internal credit approval to consummate the potential transaction, nor had any bid for the purchase of Packable's assets been received. On that same day, the ABL Agent issued a notice (the "Forbearance Termination Notice") that, in light of the occurrence of the Credit Approval Termination Event, the Amended Forbearance Agreement had terminated. Thereafter, the ABL Lenders exercised their cash dominion rights with respect to Packable's operating accounts and

swept the cash held in those accounts, leaving Packable with a cash balance of approximately $1.7 million.

15.     Following the defaults and termination of the ABL Lenders' agreed forbearance, and notwithstanding the exercise of their cash dominion rights, the ABL Lenders continued to advance funds on a discretionary week-to-week basis for several more weeks as Packable's advisors attempted to pursue an alternative going concern transaction. The funding provided by the ABL Lenders during this period was used to support certain limited disbursements of Packable, including payroll-related expenses, in accordance with an agreed-upon budget and subject to certain termination events.

16.     As of the Petition Date, the aggregate principal amount, plus accrued interest, owing by the Debtors to the ABL Lenders under the ABL Credit Agreement is approximately $53.7 million (including outstanding letter of credit and purchase card obligations).

**B.     The Term Loan Facility**

17.     On April 14, 2022, Holdings entered into the Term Loan Credit Agreement (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "Term Loan Credit Agreement"), which governs a multi-tranche term loan facility (the "Term Loan Facility") with Alter Domus (US) LLC (the "Term Loan Agent" and, together with the ABL Agent, the "Agents") as agent, and the lenders from time to time party thereto (the "Term Loan Lenders" and, together with the Term Loan Agent, the "Term Loan Secured Parties"), pursuant to which certain Term Loan Lenders (the "Tranche A Term Loan Lenders") provided a term loan (the "Tranche A Term Loan") to the Debtors in aggregate principal amount of $86,608,293.98, comprised of $77,700,000 in new money advances and $8,908,293.98 of rolled outstanding

accounts payable,[3] all of which remains outstanding. The Term Loan Credit Agreement contemplated three potential additional tranches of term loans in an aggregate amount of up to $215 million, with any second tranche (the "Tranche B Term Loan") to be funded on or around July 15, 2022 in the amount of at least $65 million. However, the potential Tranche B Term Loan and any subsequent tranches were uncommitted and at the Term Loan Lenders' discretion.

18. The Tranche A Term Loan matures on October 14, 2029. Borrowings under the Term Loan Facility earn interest at a non-default rate of 15% per annum, payable solely in kind.

19. All obligations under the Term Loan Facility are guaranteed on a subordinated secured second-lien basis by each of Holdings' wholly-owned domestic subsidiaries. The Term Loan Facility is secured by second priority liens on substantially all assets of Holdings and its wholly-owned domestic subsidiaries, including intellectual property.

20. In June 2022, Packable learned that the uncommitted potential Tranche B Term Loan was not going to be funded.

21. On July 21, 2022, certain Term Loan Lenders (the "Bridge Loan Lenders") provided a short-term loan pursuant to the Term Loan Credit Agreement to the Debtors in an aggregate principal amount of $8,715,000 (the "Bridge Loan"), all of which remains outstanding. The purpose of the Bridge Loan was to provide Packable with incremental liquidity while it attempted to finalize a permanent refinancing facility proposed to be provided by a third party. The Bridge Loan is guaranteed by the same entities as those guaranteeing the Tranche A Term Loan and secured by the same assets with liens having the same priority as those securing the

---

[3] These rolled accounts payable were owed to certain vendors represented on Packable's Board that also agreed to participate in the new money advances under the Tranche A Term Loan.

Tranche A Term Loan. However, the Bridge Loan matures on August 15, 2022 and is entitled to repayment before the Tranche A Term Loan.

22. On August 9, 2022, the Term Loan Agent issued a notice of default and reservation of rights with respect to the Term Loan Facility.

23. As of the Petition Date, there is approximately $95.4 million in aggregate principal amount outstanding under the Term Loan Facility (including the Bridge Loan).

### C. The Intercreditor Agreement

24. The respective rights of the ABL Secured Parties and the Term Loan Secured Parties (collectively, the "Prepetition Secured Parties") are governed by that certain Intercreditor Agreement dated as of April 14, 2022 (the "Intercreditor Agreement"). The Intercreditor Agreement provides, *inter alia*, that until all obligations under the ABL Facility have been indefeasibly paid in full, (a) the ABL Secured parties shall have the exclusive right to take any enforcement action with respect to the Prepetition Collateral, and (b) if the ABL Secured Parties consent to the Company's use of cash collateral in connection with an insolvency proceeding, the Term Loan Secured Parties will be deemed to also consent and are subject to restrictions on the forms of adequate protection they may receive.

### D. The Cash Collateral

25. As of the Petition Date, the Debtors are holding cash totaling approximately $1,921,595.04. *See* 13-week budget (the "Budget"), a copy of which is attached to the Interim Order as **Exhibit A**. The ABL Secured Parties have a security interest in and liens on all of this cash and in all of the Debtors' projected postpetition receipts. The Term Loan Secured Parties have a second priority security interest in and liens on all of the Debtors' cash and postpetition receipts, subject to the terms of the Intercreditor Agreement. The Debtors have negotiated with the ABL Secured Parties for the consensual use of cash collateral on the terms set forth herein (to

which the Term Loan Secured Parties are deemed to consent pursuant to the Intercreditor Agreement).

## RELIEF REQUESTED

26.     By this Motion, the Debtors seek entry of the Cash Collateral Orders: (a) authorizing the Debtors' use of cash collateral (the "Cash Collateral") and all other Prepetition Collateral, subject to the terms and conditions set forth therein; (b) granting certain adequate protection to the Prepetition Secured Parties; (c) subject to entry of a Final Order and to the extent set forth herein, waiving the Debtors' right to surcharge the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code, any "equities of the case" claims under section 552(b) of the Bankruptcy Code, and a waiver of any marshaling obligations; (d) vacating or modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to permit the Debtors and the Prepetition Secured Parties to implement and effectuate the terms and provisions of the Interim Order; and (e) scheduling the Final Hearing within thirty (30) days after entry of the Interim Order to consider the relief requested in the Motion on a final basis and the entry of a Final Order.

## THE DEBTORS' IMMEDIATE NEED TO USE CASH COLLATERAL

27.     The ability of the Debtors to fund their liquidation process and complete an efficient and value-maximizing wind-down requires immediate continued use of Cash Collateral and the other Prepetition Collateral.  In the absence of the use of Cash Collateral and the other Prepetition Collateral, the continued liquidation of the Debtors' business would not be possible, causing immediate and irreparable harm to the Debtors, their estates, and their creditors.  The Debtors do not have access to unencumbered cash to fund the wind-down without the use of Cash Collateral. Consequently, the relief requested in this Motion is necessary for the preservation and liquidation of their property, and is in the best interests of the Debtors, their estates and their creditors.

28.     The ABL Secured Parties and the Debtors have negotiated at arm's-length and in good faith regarding the Debtors' use of Cash Collateral to fund the continued liquidation of the Debtors' business during the period from the Petition Date through the earlier of (a) September 27, 2022 (i.e., 30 days after the Petition Date) if the Final Order has not been entered by the Court prior to such date; and (b) the Termination Date (*i.e.*, the occurrence of any triggering event as described in the Interim Order).  The ABL Secured Parties have agreed (and the Term Loan Secured Parties are deemed to consent) to the Debtors' proposed use of Prepetition Collateral, including Cash Collateral, on the terms and conditions set forth in the Interim Order, and the terms of the adequate protection provided for therein.  Subject to the terms set forth in the Interim Order, the Debtors will use Cash Collateral in accordance with the Budget, which sets forth the Debtors' projected receipts and disbursements, on a cash basis, subject to certain permitted variances, for the period beginning on the Petition Date.

29.     As further set forth herein, the Interim Order provides adequate protection to the Prepetition Secured Parties in the form of, among other things, adequate protection liens and superpriority claims to protect the Prepetition Secured Parties against any diminution in value occurring from and after the Petition Date and arising from, among other things, the Debtors' use, lease, consumption or disposition of the Prepetition Collateral as of the Petition Date, including Cash Collateral.

30.     Access to existing Cash Collateral on an interim basis will provide the Debtors with the liquidity necessary to continue to liquidate their assets in an orderly manner, thereby facilitating an efficient and value-maximizing wind-down process.  Without access to such liquidity, the Debtors' ability to preserve and recover value for the benefit of creditors through chapter 11 would be jeopardized, to the detriment of the Prepetition Secured Parties and all of the Debtors' other

stakeholders. As a result, the Debtors have an immediate need to use Cash Collateral to ensure access to sufficient working capital to administer these Chapter 11 Cases.

## SUMMARY OF THE MATERIAL TERMS OF THE INTERIM ORDER

31.     Pursuant to Bankruptcy Rule 4001(b) and (d) and Local Rule 4001-2(a)(i) and (ii), the following is a concise statement and summary[4] of the material terms of the Interim Order (collectively, the "Highlighted Provisions"):

| Material Terms | Summary | Para(s). of Interim Order |
|---|---|---|
| **The Amount of Cash Collateral the Debtors' Seek Permission to Use**<br><br>*Bankruptcy Rule 400l(b)(1)(B)(i)*<br><br>*Local Rule 4001-2(a)(i)(A)* | The Debtor seeks authority to use any and all cash of the Debtors, including cash and other amounts on deposit or maintained in any bank account or accounts of the Debtors and any amounts generated by the collection of accounts receivable, the sale of inventory, or other disposition of the Prepetition Collateral existing as of the Petition Date or arising or acquired after the Petition Date (together with all proceeds of any of the foregoing, the "Cash Collateral"). | ¶ E(i) |
| **Parties with an Interest in Cash Collateral**<br><br>*Bankruptcy Rule 400l(b)(1)(B)(i)* | The Prepetition Secured Parties | ¶ E(i) |
| **Purpose for Use of Cash Collateral**<br><br>*Bankruptcy Rule 400l(b)(1)(B)(ii)* | In accordance with the Budget, to (a) finance working capital and for general corporate purposes to effectuate the wind-down of the Debtors' operations and the liquidation of the Debtors' assets, (b) pay amounts authorized to be paid under "first" and "second" day | ¶¶ F; 2-4 |

---

[4]   The summaries and descriptions of the terms and conditions for the Debtors' use of Cash Collateral and the provisions of the proposed Interim Order described in this Motion are intended solely for informational purposes to provide the Court and parties in interest with an overview of the significant terms thereof. The summaries and descriptions are qualified in their entirety by proposed Interim Order. In the event there is any conflict between this Motion and the Interim Order or Final Order (as applicable), the Interim Order or Final Order (as applicable) will control in all respects.  Defined terms used and not otherwise defined in this summary have the meanings ascribed to them in the proposed Interim Order.

| Material Terms | Summary | Para(s). of Interim Order |
|---|---|---|
| | orders, and (c) pay the fees, costs and expenses incurred by the Debtors in the administration of these Chapter 11 Cases. | |
| **Funding of Non-Debtor Affiliates with Cash Collateral**<br><br>*Local Rule 4001-2(a)(i)(D)* | None. | n/a |
| **Budget, Reporting, and Variance Covenants**<br><br>*Bankruptcy Rule 400l(b)(1)(B)(ii)*<br><br>*Local Rule 4001-2(a)(i)(E)* | The Debtors may use Cash Collateral during the Cash Collateral Period up to the Cash Collateral Amount only to pay the amount and type of expenses set forth in the cash collateral budget attached as Exhibit 1 to the proposed Interim Order (as the same may be updated from time to time with the prior written consent of the ABL Agent, the "Budget") during the periods covered by the Budget in which such expenses are projected to be paid.<br><br>Not later than 11:59 p.m. on Thursday September 8th, 2022, and each Thursday thereafter, the Debtors shall furnish to the ABL Agent a weekly report (the "Budget Compliance Report") that sets forth, as of the preceding [Saturday] of such week, for the prior week and on a cumulative basis from the first date of the Budget a "Cash Flow Measurement Period"), the actual results for each line item set forth in the Budget.<br><br>The Debtors shall be deemed in compliance with the Budget to the extent that the actual amount of the "Operating Disbursements" for any Cash Flow Measurement Period does not exceed 110% of the amount projected in the "Operating Disbursements" line item of the Budget for such Cash Flow Measurement Period (the "Permitted Variances"). | ¶¶ 3(a)-(c) |
| **Carve Out** | The Interim Order provides a "Carve Out" equal to the sum of (i) all fees required to be paid (a) to the Clerk of the Court and (b) to the Office of the U.S. Trustee under | ¶¶ 4(a) |

| Material Terms | Summary | Para(s). of Interim Order |
|---|---|---|
| *Local Rule 4001-2(a)(i)(F)* | section 1930(a) of title 28 of the United States Code plus interest at the statutory rate, pursuant to 31 U.S.C. § 3717; (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code; and (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses, of any Professional (as defined below) of the Debtors and any Committee, other than any restructuring, sale, success, or other transaction fee of such Professionals (including the Consultant) (the "<u>Allowed Professional Fees</u>"), not to exceed the lesser of (x) the actual amounts, and (y) the aggregate amounts set forth for all Professionals in the Budget (exclusive of the Permitted Variances) for such period, incurred by counsel or financial advisors retained by the Debtors or any Committee (if appointed) pursuant to section 327, 328, 363 or 1103 of the Bankruptcy Code (the "<u>Professionals</u>") at any time before or on the first business day following delivery by the ABL Agent of the Carve Out Trigger Notice (exclusive of any "success" or other similar fee). . | |
| **Duration of Use of Cash Collateral/ Termination Events**<br><br>*Bankruptcy Rule 400l(b)(1)(B)(iii);*<br><br>*Local Rule 4001-2(a)(i)(M)* | The Debtors are authorized to use Cash Collateral in accordance with the Budget for the period from the Petition Date through the date that the (i) ABL Agent (at all times prior to Payment in Full the ABL Obligations) or (ii) the Term Loan Agent (after the Payment in Full of the ABL Obligations), delivers a notice to the lead counsel for the Debtors, the U.S. Trustee, the Term Agent, and, if appointed, any Committee that one of the following events has occurred (each, a "<u>Termination Event</u>") and the Post-Carve Out Reserve has been invoked:<br><br>a. the Debtors' failure to satisfy any of the Milestones (defined below);<br><br>b. the entry of an order of this Court terminating, reversing, adversely amending, supplementing, staying, or vacating any material provisions of the Interim Order without the prior consent of the ABL Agent; | ¶ 5 |

| Material Terms | Summary | Para(s). of Interim Order |
|---|---|---|
| | c. the appointment in any of the Chapter 11 Cases of a trustee or an examiner with expanded powers, without the prior written consent of the ABL Agent; | |
| | d. a filing by any Debtor or any other person of any motion, pleading, application, or adversary proceeding challenging the validity, enforceability, perfection or priority of the liens securing the ABL Prepetition Obligations or asserting any other cause of action against and/or with respect to the ABL Credit Agreement or any other ABL Loan Document, the ABL Collateral, the ABL Agent, or any of the other ABL Parties (or if the Debtors support any such motion, pleading, application, or adversary proceeding commenced by any other party); | |
| | e. the dismissal of any of the Chapter 11 Cases or the conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, without the prior written consent of the ABL Agent; | |
| | f. the failure of the Debtors to perform, in any material respect, any of the terms, provisions, conditions, covenants, or obligations under the Interim Order; | |
| | g. failure by the Debtors to comply with the Budget, subject to the Permitted Variances, without the prior written consent of the ABL Agent; | |
| | h. the resignation, denial of retention, or termination of Brian Teets, of Alvarez and Marsal North America, LLC, as chief restructuring officer, without the prior written consent (which writing may be in e-mail) of the ABL Agent; | |
| | i. the payment of, or application by the Debtors for authority to pay, any prepetition claim unless in accordance with the Budget, without the prior written consent (which writing may be in e-mail) of the ABL Agent; | |

| Material Terms | Summary | Para(s). of Interim Order |
|---|---|---|
| | j. failure to make required payments of the ABL Prepetition Obligations consistent with the Budget, without the prior written consent of the ABL Agent (which writing may be in e-mail); | |
| | k. any material misrepresentation by any Debtor in the financial reporting or certifications to be provided by the Debtors to the ABL Agent under the ABL Loan Documents and/or the Interim Order; | |
| | l. the entry of an order by the Court terminating or modifying the exclusive right of any Debtor to file a plan pursuant to section 1121 of the Bankruptcy Code, without the prior written consent of the ABL Agent; | |
| | m. the entry of an order in the Chapter 11 Cases charging any of the Prepetition Collateral under section 506(c) or limiting the extent or priority of the liens in favor of the ABL Agent pursuant to section 552(b) of the Bankruptcy Code or the commencement of other actions that are materially adverse to any of the ABL Agent or ABL Parties or their respective rights and remedies under the ABL Loan Documents in the Cases (or any order requiring any of the ABL Agent or ABL Parties to be subject to the equitable doctrine of "marshalling") without the prior written consent of the ABL Agent; | |
| | n. without the prior written consent of the ABL Agent, the obtaining after the Petition Date of credit or the incurring of indebtedness that is, in each case, (i) secured by a security interest, mortgage or other lien on all or any portion of the ABL Collateral (as defined below) that is equal or senior in priority to any security interest, mortgage or other lien of the ABL Agent, including, without limitation, any ABL Adequate Protection Liens; or (ii) entitled to priority administrative status that is equal or senior in priority to that granted to the ABL Agent, including, without limitation, the ABL Adequate Protection Superpriority Claim; | |

| Material Terms | Summary | Para(s). of Interim Order |
|---|---|---|
| | o. any Debtor, including any subsidiary or affiliate thereof, promotes or otherwise markets discounting of ABL Collateral (as defined below) offered for sale other than in the normal course of business or in a manner consistent with the Inventory Disposition Agreement; | |
| | p. without the prior written consent of the ABL Agent, the termination, discontinuation or suspension of the Sales under the Inventory Disposition Agreement; | |
| | q. the automatic stay shall be modified, reversed, revoked or vacated in a manner that has a material adverse impact on the rights and interests of the ABL Agent or any of the ABL Parties, without the prior written consent of the ABL Agent; or | |
| | r. the Court shall have entered an order avoiding, disallowing, subordinating or recharacterizing any claim, lien, or interest held by the ABL Agent or any of the ABL Parties arising under the ABL Loan Documents. | |
| **Sale Milestones**<br><br>*Local Rule 4001-2(a)(i)(H)* | The Interim Order provides for the following "<u>Milestones</u>":<br><br>a. Within 3 business days of the Petition Date, the Court shall have entered interim orders in form and substance, in each case, satisfactory to the ABL Agent, (i) authorizing the Debtors to use Cash Collateral on terms and conditions acceptable to the ABL Agent; (ii) confirming that the Inventory Disposition Agreement is effective and authorizing the continuation of the Sales; and (iii) authorizing the Debtors to use and continue to operate the Cash Management System;<br><br>b. Within 30 days of the Petition Date, the Court shall have entered final orders in form and substance, in each case, satisfactory to | ¶ 6 |

| Material Terms | Summary | Para(s). of Interim Order |
|---|---|---|
| | the ABL Agent, authorizing the Debtors: (i) to use Cash Collateral on terms and conditions acceptable to the ABL Agent; (ii) to assume the Debtors' Inventory Disposition Agreement; (iii) to continue the Sales; and (iv) to use and continue to operate the Cash Management System; and<br><br>c. Prior to the entry of the Final Order, the Debtors shall have retained a consultant reasonably acceptable to the Debtors and the ABL Agent for and in connection with a sale process pursuant to section 363 of the Bankruptcy Code or otherwise with respect to all intellectual property owned by the Debtors. | |
| **Proposed Adequate Protection**<br><br>*Bankruptcy Rule 4001(b)(1)(B)(iv)*<br><br>*Local Rule 4001-2(a)(i)(B)* | Each Agent, on behalf of itself and for the benefit of ABL Lenders or Term Loan Lenders, as applicable, is granted the following:<br><br>• Adequate Protection Liens. ¶ 7(a).<br><br>• Adequate Protection Superpriority Claims. ¶ 7(b).<br><br>• Default Interest Rate. ¶ 7(c).<br><br>In addition, the ABL Agent, on behalf of itself and for the benefit of the ABL Lenders, is granted the following:<br><br>• Mandatory Paydown of ABL Prepetition Obligations. ¶ 7(d).<br><br>• Liquidation of Collateral Pursuant to Inventory Disposition Agreement. ¶ 7(e).<br><br>• Fees and Expenses. ¶ 7(f)<br><br>• Maintenance of Debtors' Cash Management System. ¶ 7(g) | ¶ 7 |

| Material Terms | Summary | Para(s). of Interim Order |
|---|---|---|
| | • Indemnity Reserve. ¶ 7(h). | |
| **Liens on Unencumbered Assets** *Local Rule 4001-2(a)(i)(G)* | As adequate protection, the Debtors are authorized to grant, and as of entry of the Interim Order are deemed to have granted, to each Prepetition Agent, for the benefit of itself and the applicable Prepetition Lenders, valid, binding, enforceable and perfected replacement and additional liens upon and security interests in all Prepetition Collateral that was not otherwise subject to valid, perfected, enforceable, and unavoidable liens on the Petition Date. | ¶ 7(a) |
| **Joint Liability** *Local Rule 4001-2(a)(i)(J)* | None. | n/a |
| **Payment of Secured Parties' Fees Without Review** *Local Rule 4001-2(a)(i)(K)* | Payment of the ABL Agent's fees and expenses are subject to review by the Debtors, the U.S. Trustee and counsel to any Committee appointed in the Chapter 11 Cases, provided that the Debtors are authorized to pay upon entry of the Interim Order all reasonable and documented fees, costs and out-of-pocket expenses of the ABL Agent incurred on or prior to such date without the need for any professional engaged by the ABL Agent to first deliver a copy of its invoice. | ¶ 7(f) |
| **Use of Estate Funds for Investigations** *Local Rule 4001-2(a)(i)(L)* | Up to an aggregate amount of $[50,000] of (a) the proceeds of the Prepetition Collateral (including Cash Collateral) or (b) the Carve Out may be used by the Committee during the Challenge Period to investigate (but not to prosecute or challenge) the claims and liens of the ABL Agent and other potential claims, counterclaims, causes of action or defenses against the ABL Agent, the ABL Lenders, and/or the other ABL Parties. | ¶ 18 |
| **Binding Effect of the Debtors' Stipulations on Third Parties** | Subject to the Challenge Period, the stipulations, releases, and admissions contained in the Interim Order, including, without limitation, the Debtors' Stipulations, shall be binding upon all other parties-in-interest, | ¶ 19(a) |

| Material Terms | Summary | Para(s). of Interim Order |
|---|---|---|
| *Bankruptcy Rule 4001(b)(1)(B)(iii);* *Local Rule 4001-2(a)(i)(Q)* | including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for a Debtor or the Committee (if appointed) and any other person acting on behalf of the Debtors' estates. | |
| **Challenge Period** *Local Rule 4001-2(a)(i)(Q)* | Seventy-five (75) calendar days after entry of the Interim Order, subject to further extension by written agreement of the ABL Agent or Term Agent, as applicable. | ¶ 19(b) |
| **Liens on Chapter 5 Actions** *Local Rule 4001-2(a)(i)(U)* | As adequate protection of the interests of the Prepetition Secured Parties in the Prepetition Collateral against any Diminution in Value of such interests, subject to entry of the Final Order, the Prepetition Secured Parties are granted liens on the proceeds of any avoidance actions brought pursuant to Chapter 5 of the Bankruptcy Code or applicable state law equivalents. | ¶ 7(a) |
| **506(c) Waiver** *Local Rule 4001-2(a)(i)(V)* | Upon entry of the Final Order, the Debtors waive any right to surcharge the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code. | ¶ 17 |
| **552(b) Waiver** *Local Rule 4001-2(a)(i)(W)* | Upon the entry of a Final Order, the Prepetition Secured Parties will not be subject to the "equities of the case" exception contained in section 552(b) of the Bankruptcy Code. | ¶ 16 |
| **Marshalling** *Local Rule 4001-2(a)(i)(X)* | Upon the entry of a Final Order, the Prepetition Secured Parties will not be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the Prepetition Collateral. | ¶ 15 |
| **Provisions that Limit the Court's Discretion** *Local Rule 4001-2(a)(i)(C)* | None. | n/a |

| Material Terms | Summary | Para(s). of Interim Order |
|---|---|---|
| | | |
| **Prepayment Penalty**<br><br>*Local Rule 4001-2(a)(i)(I)* | None. | n/a |
| **Cross-Collateralization**<br><br>*Local Rule 4001-2(a)(i)(N)* | None. | n/a |
| **Roll-Up**<br><br>*Local Rule 4001-2(a)(i)(O)* | None. | n/a |
| **Priming Valid Liens**<br><br>*Local Rule 4001-2(a)(i)(P)* | None. | n/a |
| **Approving All Terms of Loan Agreement**<br><br>*Local Rule 4001-2(a)(i)(R)* | None. | n/a |
| **Stay Termination and Remedies Notice Period**<br><br>*Local Rule 4001-2(a)(i)(S)* | In addition, and without limiting the foregoing, upon the occurrence of the Termination Date, and after providing five (5) days (the "<u>Remedies Notice Period</u>") prior written notice to (i) the Court, (ii) counsel for the Debtors, (iii) the Term Agent, (iv) counsel for the Committee (if appointed), and (v) the U.S. Trustee, and in accordance with the terms of the Interim Order, the ABL Agent shall be entitled to an expedited hearing before this Court to occur immediately following the expiration of the Remedies Notice Period in order to obtain relief from the automatic stay provisions of | ¶ 11 |

| Material Terms | Summary | Para(s). of Interim Order |
|---|---|---|
| | section 362 of the Bankruptcy Code to take any action and exercise all rights and remedies against the ABL Collateral provided under the Interim Order, the ABL Loan Documents or applicable law that the ABL Agent may deem appropriate in its sole discretion to proceed against and realize upon the ABL Collateral or any other assets or properties of Debtors' Estates upon which the ABL Agent have been or may hereafter be granted liens or security interests to obtain the full and indefeasible repayment of all Secured Obligations (as defined in the ABL Credit Agreement). For the avoidance of doubt, the Remedies Notice Period shall run simultaneously from the date that ABL Agent provides any notice to the Debtors, the U.S. Trustee, the Term Agent, and if appointed, the Committee, that is required pursuant to the Interim Order. | |
| **Limitations on What May Be Raised at Hearing During Remedies Notice Period**<br><br>*Local Rule 4001-2(a)(i)(T)* | None. | n/a |

## BASIS FOR RELIEF REQUESTED

## I.  The Debtors' Use of Cash Collateral and Proposed Adequate Protection Are Appropriate and Should Be Authorized

32.    The Debtors' use of property of their estates, including Cash Collateral, is governed by section 363 of the Bankruptcy Code.[5]  Pursuant to section 363(c)(2) of the Bankruptcy Code, a

---

[5]  The Bankruptcy Code defines "cash collateral" as follows:

Cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of

debtor may use cash collateral as long as "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."  11 U.S.C. § 363(c)(2).

33.     Section 363(e) of the Bankruptcy Code provides for adequate protection of interests in property when a debtor uses cash collateral. 11 U.S.C. § 363(e).  Further, section 362(d)(1) of the Bankruptcy Code provides for adequate protection of interests in property due to the imposition of the automatic stay.  *See In re Cont'l Airlines*, 91 F.3d 553, 556 (3d Cir. 1996).  While section 361 of the Bankruptcy Code provides examples of forms of adequate protection, such as granting replacement liens and administrative claims, courts decide what constitutes sufficient adequate protection on a case-by-case basis.  *Resolution Trust Corp. v. Swedeland Dev. Grp., Inc. (In re Swedeland Dev. Grp., Inc.)*, 16 F.3d 552, 564 (3d Cir. 1994) ("[A] determination of whether there is adequate protection is made on a case by case basis."); *In re Satcon Tech. Corp.*, No. 12-12869, 2012 WL 6091160, at *6 (Bankr. D. Del. Dec. 7, 2012); *In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996) ("[T]he determination of adequate protection is a fact-specific inquiry . . . left to the vagaries of each case . . .") (citation and quotation omitted).

34.     The concept of adequate protection is designed to shield a secured creditor from diminution in the value of its interest in collateral during the period of a debtor's use.  *See In re Carbone Cos.*, 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008) ("The test is whether the secured party's interest is protected from diminution or decrease as a result of the proposed use of cash collateral."); *see also In re Cont'l Airlines, Inc.*, 154 B.R. 176, 180-81 (Bankr. D. Del. 1993)

---

rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section552(b) of this title, whether existing before or after the commencement of a case under this title

(holding that adequate protection for use of collateral under section 363 of the Bankruptcy Code is limited to use-based decline in value).

### A.    The Proposed Adequate Protection for the Prepetition Secured Parties Is Sufficient

35.    As set forth in the Interim Order and described above in the Highlighted Provisions, the Debtors propose to provide the Prepetition Secured Parties with various forms of adequate protection. The Debtors respectfully submit that, in light of the circumstances of the Chapter 11 Cases, the proposed adequate protection is appropriate and sufficient to protect the Prepetition Secured Parties from any Diminution in Value (as defined in the Interim Order). In particular, the Cash Collateral will be used to preserve and liquidate the Debtors' assets and administer these Chapter 11 Cases, which will allow the Debtors to maximize the value of their estates.

36.    If the Debtors are unable to use Cash Collateral, the Debtors will be unable to fund payroll obligations, market their assets, or administer this Case, thereby dissipating value to the detriment of the Prepetition Secured Parties and other stakeholders. The use of the Cash Collateral will therefore protect the Prepetition Secured Parties' security interests by preserving the value of their collateral. *See In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) (evaluating "whether the value of the debtor's property will increase as a result of the" use of collateral in determining sufficiency of adequate protection); *In re Salem Plaza Assocs.*, 135 B.R. 753, 758 (Bankr. S.D.N.Y. 1992) (holding that a debtor's use of cash collateral to pay operating expenses, thereby "preserv[ing] the base that generates the income stream," provided adequate protection to the secured creditor); *In re Constable Plaza Assocs., L.P.*, 125 B.R. 98, 105 (Bankr. S.D.N.Y. 1991) (observing that debtor's use of rents to maintain and operate property "will serve to preserve or enhance the value of the building which, in turn, will protect the collateral covered by [the secured lender's] mortgage").

37.     In light of the foregoing, the Debtors submit that the proposed adequate protection to be provided for the benefit of the Prepetition Secured Parties is appropriate.  Thus, the Debtors' proposed adequate protection not only is necessary to protect the Prepetition Secured Parties against any Diminution in Value, but also is fair and appropriate on an interim basis under the circumstances of these Chapter 11 Cases to ensure the Debtors are able to continue using the Cash Collateral in the near term, for the benefit of their estates and all parties in interest.

## II.     Failure to Obtain Immediate Interim Use of Cash Collateral Would Cause Immediate and Irreparable Harm

38.     Bankruptcy Rule 4001(b)(2) provides that a final hearing on a motion to use cash collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than fourteen (14) days after the service of such motion. Fed. R. Bankr. P. 4001(b)(2).  However, the Court is authorized to conduct a preliminary expedited hearing on the Motion and authorize the Debtor's proposed use of Cash Collateral to the extent necessary to avoid immediate and irreparable harm to the Debtor's estate.  *Id*.

39.     The Debtors have an immediate postpetition need to use Cash Collateral.  The Debtors cannot preserve and liquidate estate assets during the pendency of the Chapter 11 Cases without access to cash.  The Debtors will use cash to, among other things, market their assets and wind down their operations in an orderly manner during the Chapter 11 Cases.  The Debtors believe that substantially all of their available cash constitutes Cash Collateral, as that term is used by section 363(c) of the Bankruptcy Code.  The Debtors therefore will be unable to proceed with liquidating their business without the ability to use Cash Collateral, and will suffer immediate and irreparable harm to the detriment of all creditors and other parties in interest.  In short, the availability of sufficient working capital and liquidity to the Debtors through the use of Cash Collateral is vital to liquidate and maximize the value of the Debtors' estates.

40.    The Debtors, therefore, seek immediate authority to use the Cash Collateral on an interim basis and as set forth in this Motion and in the Interim Order to prevent immediate and irreparable harm to their estates pending the Final Hearing pursuant to Bankruptcy Rule 4001(b)(2).  Accordingly, to the extent that the Debtors require the use of Cash Collateral, the Debtors respectfully submit that they have satisfied the requirements of Bankruptcy Rule 4001(b)(2) to support an expedited preliminary hearing and immediate Cash Collateral availability on an interim basis.

### III.    Modification of the Automatic Stay on a Limited Basis Is Warranted

41.    The proposed Interim Order contemplates (and the proposed Final Order will contemplate) a modification of the automatic stay (to the extent applicable) as necessary to, inter alia, permit the Debtors to grant the security interests and liens described above, and to perform such acts as may be requested to assure the perfection and priority of such security interests and liens.  In addition, the Interim Order provides (and the proposed Final Order will provide) for modification of the automatic stay to allow the Prepetition Secured Parties to exercise remedies after the occurrence of an Event of Default and the expiration of the Remedies Notice Period.

42.    Stay modification provisions of this kind are ordinary and standard terms of postpetition use by debtors-in-possession of prepetition collateral, and, in the Debtors' business judgment, are reasonable under the present circumstances.  *See, e.g.*, *In re Enjoy Tech., Inc.*, No. 22-10580 (JKS) (Bankr. D. Del. July 26, 2022) (terminating automatic stay after occurrence of event of default and applicable notice); *In re Stimwave Techs. Inc.*, No. 22-10541 (KBO) (Bankr. D. Del. July 14, 2022) (same); *In re MD Helicopters Inc.*, No. 22-10263 (KBO) (Bankr. D. Del. Apr. 26, 2022) (same); *In re Salem Harbor Power Dev. LP (f/k/a Footprint Power Salem Harbor*

*Dev. LP)*, No. 22-10239 (MFW) (Bankr. D. Del. Apr. 22, 2022).[6]  Accordingly, the Debtors respectfully request that the Court authorize the modification of the automatic stay in accordance with the terms set forth in the Cash Collateral Orders.

## IV.    Request for a Final Hearing

43.    Pursuant to Bankruptcy Rules 4001(b)(2), the Debtors request that the Court set a date for the Final Hearing that is no later than thirty (30) days after the entry of the Interim Order and fix the date and time prior to the Final Hearing for parties to file objections to the relief requested by this Motion.

## IMMEDIATE RELIEF IS NECESSARY TO AVOID IMMEDIATE AND IRREPARABLE HARM

44.    Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003.  The Third Circuit has interpreted the language "immediate and irreparable harm" in the context of preliminary injunctions.  In that context, the court has instructed that irreparable harm is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation.  *See, e.g., Norfolk S. Ry. Co. v. City of Pittsburgh*, 235 Fed. App'x 907, 910 (3d Cir. 2007) (citing *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977)).  Furthermore, the harm must be shown to be actual and imminent, not speculative or unsubstantiated.  *See, e.g., Acierno v. New Castle County*, 40 F.3d 645, 653-55 (3d Cir. 1994).  The Debtors submit that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors and, accordingly, should be granted on an interim basis.

---

[6]  Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

## WAIVER OF NOTICE AND STAY UNDER BANKRUPTCY RULE 6004

45.     To the extent that Bankruptcy Rule 6004(a) applies, the Debtors respectfully request a waiver of such notice requirement in order to successfully implement the foregoing requested relief.

46.     The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to operate their businesses without interruption and to preserve value for their estates.  Accordingly, the Debtors respectfully request that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## RESERVATION OF RIGHTS

47.     Nothing contained herein is intended or shall be construed as:  (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an

admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## NOTICE

48.     The Debtors have provided notice of this Motion to the following parties or their respective counsel: (a) the office of the U.S. Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the ABL Agent, Julia Frost-Davies and Marc R. Leduc, Morgan, Lewis & Bockius LLP, One Federal Street, Boston, MA 02110-1726 (Julia.Frost-Davies@morganlewis.com and marc.leduc@morganlewis.com) and Mark D. Collins and Zachary I. Shapiro, Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE, 19801 (collins@RLF.com and shapiro@RLF.com); (d) counsel to the Term Loan Agent; (e) the office of the attorneys general for the states in which the Debtors operate; (f) the United States Attorney's Office for the District of Delaware; (g) the Internal Revenue Service; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002.  As this Motion is seeking "first day" relief, within two business days of the hearing on this Motion, the Debtors will serve copies of this Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

49.     No previous request for the relief sought herein has been made to this Court or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an interim order, substantially in the form attached hereto as **Exhibit A**, as well as a to-be filed final order, granting the relief requested herein and such other and further relief as may be just and proper.

Dated:  August 28, 2022
Wilmington, Delaware

Respectfully submitted,

*/s/ Christopher M. Samis*
Christopher M. Samis (No. 4909)
L. Katherine Good (No. 5101)
Aaron H. Stulman (No. 5807)
POTTER ANDERSON & CORROON LLP
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone: (302) 984-6000
Facsimile:  (302) 658-1192
Email:  csamis@potteranderson.com
        kgood@potteranderson.com
        astulman@potteranderson.com

- and -

Michael Klein, Esq.
Erica Richards, Esq.
Summer M. McKee, Esq.
**COOLEY LLP**
55 Hudson Yards
New York, NY 10001
Telephone: (212) 479-6000
Facsimile:  (212) 479-6275
Email:  mklein@cooley.com
        erichards@cooley.com
        smckee@cooley.com

- and -

Cullen Drescher Speckhart, Esq.
**COOLEY LLP**
1299 Pennsylvania Avenue, NW Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Facsimile: (202) 842-7899
Email: cspeckhart@cooley.com

*Proposed Counsel for Debtors and Debtors in Possession*

**Exhibit A**

**Proposed Interim Order**

|  |  |
|---|---|
| In re: | ) |
|  | ) Chapter 11 |
|  | ) |
| PACKABLE HOLDINGS, LLC F/K/A | ) Case No. 22-_____ (___) |
| ENTOURAGE COMMERCE, LLC, *et al.*,[1] | ) |
|  | ) |
| Debtors. | ) (Joint Administration Requested) |
|  | ) |

## INTERIM ORDER (I) AUTHORIZING
## USE OF CASH COLLATERAL AND AFFORDING
## ADEQUATE PROTECTION; (II) MODIFYING AUTOMATIC STAY;
## (III) SCHEDULING A FINAL HEARING; AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "Motion") of the above-captioned debtors and debtors in possession (collectively, the "Debtors") in the above-captioned jointly administered chapter 11 cases (collectively, the "Cases"), seeking entry of an order (this "Interim Order") pursuant to sections 105, 361, 362, 363 and 507 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2, of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") and unless otherwise ordered by this Court, *inter alia*:[2]

(a)     authorizing the Debtors' use of Cash Collateral (as defined below), subject to the

terms of this Interim Order, and granting adequate protection to the ABL Agent,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: Packable Holdings, LLC (6932); Greenpharm Ventures LLC (1513); Packable Media, LLC (6006); Pharmapacks, LLC (6676); Packable Ventures, LLC (1172); and Access Brands, LLC (8582). The location of the Debtors' service address in these chapter 11 cases is 1985 Marcus Avenue, Suite 207, Lake Success, NY 11042.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion or the ABL Credit Agreement or the Term Loan Agreement (each, as defined herein), as applicable.

ABL Lenders, the Term Agent and the Term Lenders (each as defined below) in respect of their rights under the ABL Loan Documents or the Term Loan Documents (each as defined below), as applicable, and their respective interests in the Prepetition Collateral (as defined below) pursuant to sections 105, 361, 362, 363, and 507 of title 11 of the United States Code (the "Bankruptcy Code") with respect to any Diminution in Value (as defined below) of such rights and interests on and after the Petition Date (as defined below);

(b)     vacating and modifying the automatic stay arising under section 362 of the Bankruptcy Code in accordance with the provisions hereof to the extent necessary to implement and effectuate the terms and provisions of this Interim Order;

(c)     scheduling a final hearing (the "Final Hearing") pursuant to Bankruptcy Rule 4001(b)(2) to be held before this Court to consider entry of an order authorizing and granting the relief requested in the Motion on a final basis (the "Final Order"); and

(d)     granting certain related relief.

The Court having considered the Motion, the *Declaration of Brian Teets in Support of the Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), and the evidence submitted and argument made at the interim hearing held on August __, 2022 (the "Interim Hearing"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001, and 9014, and all applicable Local Bankruptcy Rules; and the Interim Hearing to consider the interim relief requested in the Motion having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and it appearing to the Court that granting the relief set forth herein is

necessary to avoid immediate and irreparable harm to the Debtors and their estates, and is otherwise fair and reasonable, in the best interests of the Debtors, their estates, and their creditors and equity holders, and essential for the continued operation of the Debtors' business and the maximization of the value of the Debtors' assets; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

A.      <u>Petition Date</u>.  On August 28, 2022 (the "<u>Petition Date</u>"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>").

B.      <u>Debtors in Possession</u>.  The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C.      <u>Jurisdiction and Venue</u>.  This Court has jurisdiction over the Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.  Venue for the Cases and proceedings on the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      <u>Committee Formation</u>.  As of the date hereof, the United States Trustee for the District of Delaware (the "<u>U.S. Trustee</u>") has not yet appointed an official committee of unsecured creditors (a "<u>Committee</u>") in these Cases pursuant to section 1102 of the Bankruptcy Code.

---

[3]  The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

274254374 v2

E.      The Debtors' Stipulations.  After consultation with their attorneys and financial advisors, and without prejudice to the rights of parties in interest as set forth in paragraph 19 herein, the Debtors, on their behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree as follows (paragraphs E(i) through E(xii) below are referred to herein, collectively, as the "Debtors' Stipulations"):

(i)      Cash Collateral.  Any and all cash of the Debtors, including cash and other amounts on deposit or maintained in any bank account or accounts of the Debtors and any amounts generated by the collection of accounts receivable, the sale of inventory, or other disposition of the Prepetition Collateral (as defined below) existing as of the Petition Date or arising or acquired after the Petition Date, together with all proceeds of any of the foregoing, is cash collateral within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral") of the ABL Agent and the Term Agent.[4]  For the avoidance of doubt, Cash Collateral includes any proceeds from the sale of inventory or any other Prepetition Collateral (as defined below).  Pursuant to section 363(c)(2) of the Bankruptcy Code, the Debtors are not able to use Cash Collateral without the ABL Agent's consent (and the deemed consent of the Term Agent) or this Court's authorization after notice and a hearing. The ABL Agent is willing to consent (and the Term Agent is deemed to consent) to the Debtors' use of the Cash Collateral, expressly limited to, and conditioned upon, the terms and conditions specified in this Interim Order.

---

[4] For the avoidance of doubt, funds deposited in the Debtors' payroll account pursuant to the Contribution Agreement (as defined in the *Motion of Debtors for Interim and Final Orders (I) Authorizing, But Not Directing, the Debtors to Pay Prepetition Wages, Compensation, and Employee Benefits; (II) Authorizing, But Not Directing, the Debtors to Continue Certain Employee Benefit Programs in the Ordinary Course; (III) Authorizing All Banks to Honor Prepetition Checks for Payment of Prepetition Employee Obligations;(IV) Approving the Contribution Agreement; and (V) Granting Other Related Relief* filed contemporaneously with this Motion) in accordance with a separate order of this Court shall not constitute Cash Collateral.

(ii)     ABL Facility.  Pursuant to that certain *Credit Agreement* dated as of July 24, 2020 (as amended, restated, supplemented, or otherwise modified from time to time, the "ABL Credit Agreement," and collectively with the Loan Documents (as defined in the ABL Credit Agreement), the Forbearance Agreement (as defined in the ABL Credit Agreement) and any other agreements and documents executed or delivered in connection with the ABL Credit Agreement, each as may be amended, restated, supplemented, waived or otherwise modified from time to time, the "ABL Loan Documents"), among (a) Packable Holdings, LLC f/k/a Entourage Commerce, LLC ("Packable Holdings") and Pharmapacks, LLC (collectively, the "ABL Borrowers"), (b) the guarantors party thereto (the "ABL Guarantors"), (c) JPMorgan Chase Bank, N.A. (in its capacities as Administrative Agent, Sole Bookrunner, and Sole Lead Arranger, the "ABL Agent"), and (d) the lenders party thereto (collectively, including the ABL Agent and the other "Secured Parties" (as defined in the ABL Credit Agreement), the "ABL Lenders," and the ABL Lenders and the ABL Agent, together, the "ABL Parties"), the ABL Lenders provided revolving credit loans, and other financial accommodations to, and issued letters of credit for the account of, the Prepetition ABL Borrowers pursuant to the ABL Loan Documents (the "ABL Facility") in an aggregate principal amount not to exceed $60 million as of the Petition Date.

(iii)    ABL Prepetition Obligations.  As of the Petition Date, the aggregate principal amount outstanding under the ABL Facility was not less than approximately $53,135,280, inclusive of not less than $282,696.62 of issued, and outstanding letters of credit, and the aggregate purchase-card obligations outstanding under the ABL facility was not less than $2,810,367.73 (collectively, together with accrued and unpaid interest, bankers' acceptances, any reimbursement obligations (contingent or otherwise) in respect of letters of credit and bankers' acceptances, any fees, expenses and disbursements (including attorneys' fees, accountants' fees,

auditor fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), treasury, cash management, bank product (including purchase card) and derivative obligations, indemnification obligations, guarantee obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the ABL Borrowers' or the ABL Guarantors' obligations pursuant to, or secured by, the ABL Loan Documents, including all "Secured Obligations" as defined in the ABL Credit Agreement, and all interest, fees, prepayment premiums, costs and other charges allowable under section 506(b) of the Bankruptcy Code, the "ABL Prepetition Obligations").

(iv)     ABL Prepetition Liens. In connection with the ABL Credit Agreement, the Debtors entered into that certain Pledge and Security Agreement, dated as of July 24, 2020 (as amended from time to time prior to the Petition Date, the "ABL Security Agreement"), by and between the Debtors, as Grantors, and the ABL Agent.  Pursuant to the ABL Security Agreement and other ABL Loan Documents, each Debtor granted senior liens on and security interests in substantially all of such Debtor's assets (the "Prepetition Collateral") to the ABL Agent for the benefit of itself and the ABL Lenders as security for the ABL Prepetition Obligations (the "ABL Prepetition Liens").

(v)     Validity, Perfection, and Priority of ABL Prepetition Liens and ABL Prepetition Obligations.  The Debtors acknowledge and agree that as of the Petition Date (a) the ABL Prepetition Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, the ABL Parties for fair consideration and reasonably equivalent value; (b) the ABL Prepetition Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to certain liens

senior by operation of law (solely to the extent such liens were valid, non-avoidable, and senior in priority to the ABL Prepetition Liens as of the Petition Date and properly perfected prior to the Petition Date or perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code) or otherwise permitted by the ABL Loan Documents (the "ABL Permitted Liens"); (c) the ABL Prepetition Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors enforceable in accordance with the terms of the applicable ABL Loan Documents; (d) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the ABL Prepetition Liens or ABL Prepetition Obligations exist, and no portion of the ABL Prepetition Liens or ABL Prepetition Obligations is subject to any challenge or defense including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the ABL Parties or any of their respective successors, assigns, affiliates, subsidiaries, parents, officers, shareholders, directors, employees, attorneys and agents, past, present and future, and their respective heirs, predecessors, successors and assigns arising out of, based upon or related to the ABL Facility, the ABL Loan Documents and/or the transactions contemplated hereunder or thereunder; (f) the Debtors have waived, discharged, and released any right to challenge any of the ABL Prepetition Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the liens securing the ABL Prepetition Obligations; and (g) the ABL Prepetition Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

(vi)     <u>Term Loan Facility</u>.  Pursuant to that certain *Term Loan Credit Agreement* dated as of April 14, 2022 (as amended, restated or otherwise modified from time to time, the "<u>Term Loan Agreement</u>," and collectively with any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, or otherwise modified from time to time, the "<u>Term Loan Documents</u>," and together with the ABL Loan Documents, the "<u>Prepetition Documents</u>"), among (a) Packable Holdings, as the borrower, (b) Alter Domus (US) LLC, as administrative agent (the "<u>Term Agent</u>," and together with the ABL Agent, the "<u>Agents</u>"), (c) the guarantors party thereto and (d) the lenders party thereto (the "<u>Term Lenders</u>," and collectively with the Term Agent, the "<u>Term Parties</u>," and together with the ABL Parties, the "<u>Secured Parties</u>"), the Term Lenders provided term loans to the Packable Holdings (the "<u>Term Loan Facility</u>," and together with the ABL Facility, the "<u>Secured Facilities</u>").

(vii)     <u>Term Loan Prepetition Obligations</u>.  The Term Loan Facility provided the Debtors with commitments to provide term loans in the aggregate principal amount of up to approximately $95,367,935, comprised of $86,652,935 in Tranche A loans ("<u>Term Loan A</u>") and $8,715,000 in bridge loans ("<u>Bridge Term Loan</u>").  As of the Petition Date, the aggregate principal amount outstanding under the Term Loan Facility was $95,367,935 (collectively, together with accrued and unpaid interest, any fees, expenses and disbursements (including, without limitation, attorneys' fees, accountants' fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), indemnification obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Debtors' obligations pursuant to the Term Loan Documents, including all "Obligations" as defined in the Term Loan Agreement, the "<u>Term Loan</u>

Prepetition Obligations," and together with the ABL Prepetition Obligations, the "Secured Prepetition Obligations").

(viii) Term Loan Liens. In connection with the Term Loan Credit Agreement, the Debtors entered into that certain Second Lien Pledge and Security Agreement, dated as of April 14, 2022 (as amended from time to time prior to the Petition Date, the "Term Loan Security Agreement"), by and between Debtors, as Grantors, and the Term Agent. Pursuant to the Term Loan Security Agreement and other Term Loan Documents, each Debtor granted a second priority security interest in the Prepetition Collateral to the Term Agent for the benefit of itself and the Term Lenders as security for the Term Loan Obligations (the "Term Loan Prepetition Liens," and together with the ABL Prepetition Liens, the "Prepetition Liens"), immediately junior to the ABL Prepetition Liens.

(ix) Validity, Perfection, and Priority of Term Loan Prepetition Liens and Term Loan Prepetition Obligations. The Debtors acknowledge and agree that as of the Petition Date (a) the Term Loan Prepetition Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, the Term Parties for fair consideration and reasonably equivalent value; (b) the Term Loan Prepetition Liens are subject and/or subordinate only to (I) certain liens senior by operation of law (solely to the extent such liens were valid, non-avoidable, and senior in priority to the Term Loan Prepetition Liens as of the Petition Date and properly perfected prior to the Petition Date or perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code) or otherwise permitted by the Term Loan Documents (the "Term Loan Permitted Liens," and together with the ABL Permitted Liens, the "Permitted Liens"),[5] and (II) the ABL Prepetition Liens, and senior in priority

---

[5] For the avoidance of doubt, as used in this Interim Order, no reference to the ABL Permitted Liens, the Term Loan Permitted Liens or the Permitted Liens shall refer to or include the ABL Prepetition Liens or the Term Loan Prepetition

over any and all other liens on the Prepetition Collateral; (c) the Term Loan Prepetition Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors enforceable in accordance with the terms of the applicable Term Loan Documents; (d) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Term Loan Prepetition Liens or Term Loan Prepetition Obligations exist, and no portion of the Term Loan Prepetition Liens or Term Loan Prepetition Obligations is subject to any challenge or defense including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Term Parties or any of their respective successors, assigns, affiliates, subsidiaries, parents, officers, shareholders, directors, employees, attorneys and agents, past, present and future, and their respective heirs, predecessors, successors and assigns arising out of, based upon or related to the Term Loan Facility, the Term Loan Documents and/or the transactions contemplated hereunder or thereunder; (f) the Debtors have waived, discharged, and released any right to challenge any of the Term Loan Prepetition Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the liens securing the Term Loan Prepetition Obligations; and (g) the Term Loan

---

Liens. Furthermore, nothing herein shall constitute a finding or ruling by this Court that any alleged Permitted Lien is valid, senior, enforceable, prior, perfected or non-avoidable. Moreover, nothing shall prejudice the rights of any party-in-interest, including, but not limited to the Debtors, the ABL Agent, the Term Agent, the ABL Lenders, the Term Lenders or a Committee, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Permitted Lien. The right of a seller of goods to reclaim such goods under section 546(c) of the Bankruptcy Code is not a Permitted Lien, rather, any such alleged claim arising or asserted as a right of reclamation (whether asserted under section 546(c) of the Bankruptcy Code or otherwise) shall have the same rights and priority with respect to the ABL Prepetition Liens and Term Loan Prepetition Liens as such claim had on the Petition Date.

Prepetition Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

(x) *Priority of Prepetition Liens; Intercreditor Agreement.* The ABL Agent, the Term Agent and others entered into that certain Intercreditor Agreement dated as of April 14, 2022 (as may be further amended, restated, supplemented, or otherwise modified in accordance with its terms, the "Intercreditor Agreement"). The Intercreditor Agreement is a "subordination agreement" within the meaning of section 510(a) of the Bankruptcy Code and, among other things, (A) confirms the senior priority of the security interests of the ABL Agent in the Collateral (as defined in the Intercreditor Agreement) to the junior priority security interests of the Term Agent in such Collateral regardless of whether such Collateral exists prior to or after the Petition Date, (B) subject to certain conditions and limitations (as provided in the Intercreditor Agreement), provides that the Term Agent shall be deemed to have consented to the use of Cash Collateral by the Debtors upon notice of the ABL Agent's consent to such use of Cash Collateral, and (C) provides certain other rights and obligations between the ABL Agent, on the one hand, and the Term Agent, on the other hand, relating to the Prepetition Collateral and these Cases.

(xi) Default by the Debtors. The Debtors acknowledge and stipulate that: (A) they have been, since January 1, 2022, and remain in default of their obligations under the ABL Loan Documents, and that an Event of Default has occurred under the ABL Loan Documents, and that since April 14, 2022, interest has accrued, and will continue to accrue, on the ABL Prepetition Obligations at the default rate set forth in the ABL Credit Agreement; and (B) they have been, since August 15, 2022, and remain in default of their obligations under the Term Loan Documents, and that an Event of Default has occurred under the Term Loan Documents, and that since August 29, 2022, interest has accrued, and will continue to accrue, on the Term Loan

Prepetition Obligations with respect to the Term Loan A at the default rate set forth in the Term Loan Agreement, and that on August 15, 2022 the Bridge Term Loan matured pursuant to the terms of the Term Loan Agreement, and that since August 15, 2022, interest has accrued, and will continue to accrue, on the Term Loan Prepetition Obligations with respect to the Bridge Term Loan at the default rate set forth in the Term Loan Agreement.

(xii)  Consulting Agreement with the Liquidator.  Pursuant to that certain agreement (the "Inventory Disposition Agreement"), entered into between Debtors, on the one hand and Hilco Merchant Resources, LLC, on the other hand (the "Consultant"), the Debtors have retained the Consultant to conduct "liquidation" sales of the Inventory and FF&E (each as defined in the Inventory Disposition Agreement).  The continued existence and validity of the Inventory Disposition Agreement and the uninterrupted continuation of the Sales (as defined in the Inventory Disposition Agreement) contemplated thereby is a condition to the consent of the ABL Agent to this Interim Order and the Debtors' use of Cash Collateral hereunder.

F.  Necessity for Relief Requested; Immediate and Irreparable Harm. The Debtors requested entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) on the terms described herein. The Debtors have an immediate need to use the Cash Collateral to, among other things, preserve and maximize the value of the assets of each Debtor's bankruptcy estate (as defined under section 541 of the Bankruptcy Code, the "Estate") in order to maximize the recovery to all creditors of each Debtor's Estate, absent which immediate and irreparable harm will result to the Debtors, their Estates, and their stakeholders. Absent the Debtors' ability to use Cash Collateral, the Debtors would not have sufficient available sources of working capital or financing and would be unable to pay their payroll and other operating expenses, or maintain their assets to the detriment of their Estates and creditors.  Accordingly, the relief requested in the Motion and

the terms set forth herein are (i) critical to the Debtors' ability to maximize the value of the Estates, (ii) in the best interests of the Debtors and their Estates, and (iii) necessary, essential, and appropriate to avoid immediate and irreparable harm to the Debtors and the Debtors' Estates, stakeholders, assets and employees.

G. <u>Adequate Protection</u>. Each of the ABL Agent, the Term Agent and the other Secured Parties are entitled to the adequate protection provided in this Interim Order pursuant to sections 361, 362 and 363 of the Bankruptcy Code. Based on the Motion and on the record presented to the Court, the terms of the proposed adequate protection arrangements and of the use of the Prepetition Collateral, including the Cash Collateral, are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of Cash Collateral.

H. <u>Sections 506(c) and 552(b) of the Bankruptcy Code; Doctrine of Marshalling</u>. In consideration for the ABL Agent's, the ABL Lenders', the Term Agent's and the Term Lenders' agreements (a) to subordinate the Adequate Protection Superpriority Claims (as defined below), the Adequate Protection Liens (as defined below), and the Prepetition Liens to the Carve Out (as defined below) and (b) to permit the Debtors' the use of Cash Collateral to fund the Budget (as defined below), in each case solely to the extent set forth in this Interim Order, the ABL Agent, the ABL Lenders, the Term Agent and the Term Lenders are entitled, upon entry of the Final Order, to the benefits of a waiver of: (i) the provisions of section 506(c) of the Bankruptcy Code, (ii) any "equities of the case" claims under section 552(b) of the Bankruptcy Code; and (iii) the doctrine of "marshalling" or any other similar doctrine with respect to any of the Prepetition Collateral.

I.    Good Cause. Good cause has been shown for immediate entry of this Interim Order, and the entry of this Interim Order is in the best interests of the Debtors, the Estates and their stakeholders. Among other things, the relief granted herein will minimize disruption of the Debtors' business and permit the Debtors to meet payroll and other expenses necessary to maximize the value of the Estates. The terms of the Debtors' use of Cash Collateral and proposed adequate protection arrangements, as set forth in this Interim Order, are fair and reasonable under the circumstances and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties.

J.    Good Faith.  The Debtors' use of Cash Collateral in accordance with the terms hereof has been negotiated in good faith and at arms'-length among the Debtors, the ABL Agent, and the consent of the ABL Agent to the Debtors' use of Cash Collateral in accordance with the terms hereof shall be deemed to have been made in "good faith."

K.    Immediate Entry.  Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b).

L.    Notice.  Upon the record presented to the Court at the Interim Hearing, and under the exigent circumstances set forth therein, requisite notice of the Motion and the relief requested thereby and this Interim Order has been provided in accordance with Bankruptcy Rules 4001(b) to (a) the U.S. Trustee; (b) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Creditors filed pursuant to Bankruptcy Rule 1007(d); (c) the Internal Revenue Service; (d) JPMorgan Chase Bank, N.A., in its capacity as ABL Agent; (e) Alter Domus (US) LLC, in its capacity as Term Agent; (f) the United States Attorney's Office for the District of Delaware; (g) the United States Securities and Exchange Commission; (h) the state attorneys general for all states in which the Debtors conduct business; (i) all parties known to the Debtors

who hold any liens or security interests in the Debtors' assets who have filed UCC-1 financing statements against the Debtors; and (j) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002 (collectively, the "<u>Notice Parties</u>"), which notice was appropriate under the circumstances and sufficient for the Motion, and the entry of this Interim Order; and no further notice of, or hearing on, the entry of this Interim Order is necessary or required.

Based upon the foregoing findings and conclusions, the Motion, the First Day Declaration and the record before the Court with respect to the Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED that:**

1.      <u>Motion Granted</u>.  The Motion is granted on an interim basis as set forth herein.  The use of Cash Collateral on an interim basis is authorized subject to the terms and conditions set forth in the Budget and this Interim Order.  Any objection to the entry of this Interim Order, to the extent not withdrawn, waived or resolved, is hereby overruled.

2.      <u>Authorization to Use Cash Collateral</u>.  The Debtors are authorized on an interim basis to use Cash Collateral solely in accordance with and to the extent set forth in the Budget (as defined below) and this Interim Order during the period commencing on the date of this Interim Order through the Termination Date (as defined below) (the "<u>Cash Collateral Period</u>") in an amount not to exceed (subject to the Permitted Variances (as defined below)) at any time (i) with respect to "Operating Disbursements" line items, the aggregate amount of disbursements projected in the "Operating Disbursements" line items of the Budget (the "<u>Projected Operating Disbursements</u>") and (ii) with respect to "Non-Operating Disbursements" line items, the aggregate amount of disbursements projected in the "Non-Operating Disbursements," line items of the Budget, in each case from the Petition Date through the date of measurement (the "<u>Cash Collateral Amount</u>").

3.      <u>Budget</u>.

(a)    The Debtors may use Cash Collateral during the Cash Collateral Period, subject to Paragraph 3(e) herein, up to the Cash Collateral Amount only to pay the amount and type of expenses set forth in the cash collateral budget attached as **Exhibit 1** hereto (as the same may be updated from time to time with the prior written consent of the ABL Agent, the "Budget") during the periods covered by the Budget in which such expenses are projected to be paid.  The Budget shall depict, on a weekly basis and line item basis (i) projected cash receipts, (ii) projected disbursements (including ordinary course operating expenses, non-operating expenses, bankruptcy-related expenses (including professional fees of the Debtors' professionals and advisors), asset sales and any other fees and expenses), and (iii) net cash flow, for the first approximately thirteen (13)-week period from the Petition Date, and such initial Budget shall be approved by, and in form and substance satisfactory to the ABL Agent, in its sole discretion (it being acknowledged and agreed that the initial Budget attached hereto is approved by and satisfactory to the ABL Agent), each in the detail provided in the initial Budget.  Each Budget delivered to the ABL Agent shall be accompanied by such customary supporting documentation as reasonably requested by the ABL Agent and shall be prepared in good faith based upon assumptions the Debtors believe to be reasonable at the time of delivery.  A copy of any Budget or updated Budget, once approved by the ABL Agent, shall be delivered by the Debtors simultaneously to the counsel for a Committee (if appointed), the Term Agent, and the U.S. Trustee.  All Cash Collateral use must be strictly in accordance with the terms of the Budget, subject to the Permitted Variances as are permitted by this Interim Order or agreed to in writing by the ABL Agent.

(b)    Not later than 11:59 p.m. (prevailing Eastern Time) on Thursday, September 8th, 2022, and each Thursday thereafter, the Debtors shall furnish to the ABL Agent and the Term Agent a weekly report (the "Budget Compliance Report") that sets forth, as of the preceding Saturday of such week, for the prior week and on a cumulative basis from the first date of the Budget (such period, the "Cash Flow Measurement Period"), the actual results for each line item set forth in the Budget.

-16-

(c)     The Debtors shall be deemed in compliance with the Budget to the extent that the actual amount of the "Operating Disbursements" (the "<u>Actual Operating Disbursements</u>") for any Cash Flow Measurement Period does not exceed 110% of the Projected Operating Disbursements for such Cash Flow Measurement Period (the "<u>Permitted Variances</u>").

(d)     The ABL Agent, in its sole discretion, may agree in writing (which writing may be in e-mail) to the use of the Cash Collateral (i) in a manner or amount which does not conform to the Budget (other than the Permitted Variances) (each such approved non-conforming use of Cash Collateral, a "<u>Non-Conforming Use</u>") or (ii) for a period following the Termination Date pursuant to Paragraph 5 of this Interim Order (such period, the "<u>Subsequent Budget Period</u>"). If such written consent is given by the ABL Agent, the Debtors shall be authorized pursuant to this Interim Order to expend Cash Collateral for any such Non-Conforming Use or any such Subsequent Budget Period in accordance with a subsequent Budget (a "<u>Subsequent Budget</u>") without further Court approval, and the ABL Agent, the other ABL Parties, the Term Agent and the other Term Parties shall be entitled to all of the protections specified in this Interim Order for any such use of Cash Collateral; <u>provided</u> <u>that</u> each such permitted Non-Conforming Use shall be deemed a modification to the Budget for all testing purposes.  The Debtors shall provide notice of any Non-Conforming Use, Subsequent Budget Period and Subsequent Budget to the U.S. Trustee, the Term Agent and counsel to the Committee, if any.

(e)     During any Remedies Notice Period (as defined herein), the Debtors may only use Cash Collateral to pay the following amounts and expenses solely in accordance with the respective Budget line items in the amounts set forth in the Budget for the week in which such Remedies Notice Period occurs: (i) the Carve Out (as defined herein); (ii) obligations for unpaid and accrued payroll and payroll taxes; (iii) sales taxes; and (iv) any such other obligations subject to the prior written consent (which written consent may be in e-mail) of the ABL Agent.

4.     <u>Carve Out</u>.

(a)     <u>Carve Out</u>.  As used in this Order, the "Carve Out" means the sum of (i) all fees required to be paid (a) to the Clerk of the Court and (b) to the Office of the U.S. Trustee under

section 1930(a) of title 28 of the United States Code plus interest at the statutory rate, pursuant to 31 U.S.C. § 3717; (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code; and (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses, of any Professional (as defined below) of the Debtors and any Committee, other than any restructuring, sale, success, or other transaction fee of such Professionals (including the Consultant) (the "Allowed Professional Fees"), not to exceed the lesser of (x) the actual amounts, and (y) the aggregate amounts set forth for all Professionals in the Budget (exclusive of the Permitted Variances) for such period, incurred by counsel or financial advisors retained by the Debtors or any Committee (if appointed) pursuant to section 327, 328, 363 or 1103 of the Bankruptcy Code (the "Professionals") at any time before or on the first business day following delivery by the ABL Agent of the Carve Out Trigger Notice (exclusive of any "success" or other similar fee).  For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the ABL Agent to lead counsel for the Debtors, the U.S. Trustee, the Term Agent and any Committee (if appointed), which notice may be delivered following the occurrence and during the continuation of a Termination Event, respectively, stating that the Post-Carve Out Reserve (as defined below) has been invoked.

   (b)  Carve Out Reserves.

    (i)  On or before the Thursday of each week, the Debtors shall utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund (A) a reserve account in an amount equal to the amount of Allowed Professional Fees for the Debtors' Professionals set forth in the Budget for that week (the "Debtor Pre-Carve Out Trigger Notice Reserve") and (B) a reserve account in an amount equal to the amount of Allowed Professional Fees for any Committee Professionals set forth in the Budget for that week (the "Committee Pre-Carve Out Trigger Notice Reserve" and, together with the Debtor Pre-Carve Out Trigger Notice Reserve, the "Pre-Carve Out Trigger Notice Reserves").  To the extent that actual fees and expenses of the Debtors' Professionals (excluding any restructuring, sale, success, or other

transaction fee of the Debtors' Professionals, including the Consultant) exceed the amounts Budgeted for such Professionals for any week, then, upon written notice to the ABL Agent (which writing may be in e-mail), such excess fees and expenses may be applied against any budgeted amounts for which such Professionals are under Budget. The Debtors shall deposit and hold each of the Pre-Carve Out Trigger Notice Reserves in a separate, segregated account in trust to pay Allowed Professional Fees for the Debtors' Professionals and the Committee's Professionals from the applicable Pre-Carve Out Notice Reserve, prior to any and all other claims, and all payments of Allowed Professional Fees incurred prior to the Termination Date (as defined below) shall be paid first from the applicable Pre-Carve Out Trigger Notice Reserve.

(ii)     On the Termination Date (as defined below), the Debtors shall utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund (A) additional amounts to the Debtors' Pre-Carve Out Trigger Reserve in an amount equal to the sum of (x) the amounts set forth in paragraphs (a)(i) and (a)(ii), above, plus (y) an amount equal to the aggregate prorated amount of Allowed Professional Fees for Debtors' Professionals in the Budget for such week if not already funded pursuant to (b)(i) above; (B) additional amounts to the Committee's Pre-Carve Out Trigger Reserve in an amount equal to the aggregate prorated amount of Allowed Professional Fees for Committee's Professionals in the Budget for such week if not already funded pursuant to (b)(i) above; and (C) a segregated reserve account in an amount not to exceed $250,000 (the "Post-Carve Out Trigger Notice Reserve" and, together with the Pre-Carve Out Trigger Notice Reserve, collectively the "Carve Out Reserves"), which amounts shall be held in a segregated account to pay any Allowed Professional Fees incurred after the first business day following delivery by the ABL Agent of the Carve Out Trigger Notice, to the extent allowed at any time whether by interim order, procedural order or otherwise, subject to the terms and conditions contained in this Interim Order.

(c)     Application of Carve Out Reserves.

(i)     All funds in the Pre-Carve Out Trigger Notice Reserves shall be used first to pay the obligations set forth in paragraphs (a)(i) through (a)(iii) of the definition of

Carve Out set forth above, but not, for the avoidance of doubt, any Allowed Professional Fees incurred on or after the Termination Date. If the Pre-Carve Out Trigger Reserve has not been reduced to zero following the payment of all obligations set forth in paragraphs (a)(i) through (a)(iii) of the definition of Carve Out incurred on or before the Termination Date, then all remaining funds shall be distributed (x) first to the ABL Agent for the benefit of itself and the other ABL Parties until all Secured Obligations (as defined in the ABL Credit Agreement) have been Paid in Full,[6] (y) second to the Term Agent for the benefit of itself and the other Term Parties until all Secured Obligations (as defined in the Term Loan Credit Agreement) have been Paid in Full, and (z) thereafter any excess shall be paid to the Debtors' creditors in accordance with their rights and priorities as of the Petition Date.

(ii)     All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the Allowed Professional Fees incurred after the first day following the delivery of a Carve Out Trigger Notice. If the Post-Carve Out Trigger Notice Reserve has not been reduced to zero following the payment of all Allowed Professional Fees incurred after the date of the Carve Out Trigger Notice, then all remaining funds shall be distributed (x) first to the ABL Agent for the benefit of itself and the other ABL Parties until all Secured Obligations (as defined in the ABL Credit Agreement) have been Paid in Full, (y) second to the Term Agent for the benefit of itself and the other Term Parties until all Secured Obligations (as defined in the Term Loan Credit

---

[6] All references to "payment in full" or "Payment in Full" or "paid in full" or "Paid in Full" with respect to the ABL Prepetition Obligations or Term Loan Prepetition Obligations mean the indefeasible repayment in full in cash of all obligations (including principal, interest, fees, prepayment premiums, expenses, indemnities, reimbursement obligations in respect of drawings under any letters of credit and all other "Secured Obligations" (as defined in the ABL Credit Agreement or the Term Loan Credit Agreement, as applicable), other than contingent indemnification obligations for which no claim has been asserted), the cash collateralization of all treasury and cash management obligations, hedging obligations, and bank product obligations, and the cancelation, replacement, backing, or cash collateralization of letters of credit, in each case, in accordance with the terms of the applicable credit facility. No facility shall be deemed to have been Paid in Full until such time as, with respect to the applicable facility, (a) the commitments to lend thereunder have been terminated, (b) with respect to the applicable Prepetition Obligations (i) the Challenge Period (as defined in Paragraph 19 of this Interim Order) shall have expired without the timely and proper commencement of a Challenge or (ii) if a Challenge is timely and properly asserted prior to the Challenge Deadline, upon the final, non-appealable disposition of such Challenge; and (c) in the case of the ABL Facility, the ABL Agent has received (i) a countersigned payoff letter in form and substance satisfactory to such Agent and (ii) releases in form and substance satisfactory to such Agent, each in its sole discretion.

Agreement) have been Paid in Full and (z) thereafter any excess shall be paid to the Debtors' creditors in accordance with their rights and priorities as of the Petition Date.

(d)     For the avoidance of doubt, the Carve Out shall be senior to all liens and claims securing the Prepetition Collateral, the Adequate Protection Liens, and any party's claims under section 507(b) of the Bankruptcy Code, as well as any and all other forms of adequate-protection, liens, or claims securing the Secured Prepetition Obligations, in each case solely to the extent provided herein.

(e)     No Direct Obligation to Pay Allowed Professional Fees. Neither the ABL Agent, the Term Agent nor any other Secured Party shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional incurred in connection with the Cases or any successor cases under any chapter of the Bankruptcy Code. Nothing in this Interim Order or otherwise shall be construed to obligate the any Secured Party in any way, to pay compensation to, or to reimburse expenses of, any Professional or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.  Payment from the Carve Out, whether by or on behalf of the ABL Agent, the Term Agent or other Secured Parties, shall not and shall not be deemed to reduce the Secured Prepetition Obligations, and shall not and shall not be deemed to subordinate any of any of the ABL Agent's , the Term Agent's or other Secured Parties' liens and security interests in the Prepetition Collateral, any other ABL Collateral (as defined below), the Adequate Protection Superpriority Claims (as defined below) to any junior pre- or post-petition lien, interest or claim in favor of any other party.  Nothing in Paragraph 4 of this Interim Order shall be construed to obligate the ABL Agent, the Term Agent or any other Secured Party in any way, to directly pay compensation to or to reimburse expenses of any Professional, or to ensure or guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.   Nothing herein, including the inclusion of line items in the Budget for Professionals, shall be construed as consent to the allowance of any particular professional fees or expenses of the Debtors, the Committee, or of any other person or shall affect the right of the ABL Agent, the Term Agent and any of the other Secured Parties to object to the allowance and payment

of such fees and expenses. Furthermore, nothing in this Interim Order or otherwise shall be construed to increase the Carve Out if allowed fees and/or disbursements are higher in fact than the amounts subject to the Carve Out as set forth in this Interim Order.

(f)     Payment of Carve Out. Any payment or reimbursement made in respect of any Allowed Professional Fees after the Termination Date shall permanently reduce the Carve Out on a dollar-for-dollar basis.

5.     Termination Date. Immediately upon written notice by the (i) ABL Agent (at all times prior to Payment in Full in cash of all Secured Obligations (as defined in the ABL Credit Agreement)) or (ii) the Term Loan Agent (solely to the extent all Secured Obligations (as defined in the ABL Credit Agreement) have been Paid in Full in cash), to the lead counsel for the Debtors, the U.S. Trustee, the Term Agent, and, if appointed, any Committee that a Termination Event (as defined below) has occurred and is continuing and that the Post-Carve Out Reserve has been invoked (the date such notice is delivered, the "Termination Date"), the Debtors' authorization, and the ABL Agent's consent for the Debtors' use of Cash Collateral pursuant to this Interim Order shall terminate. Each of the following events shall be a "Termination Event":

(a)     the Debtors' failure to satisfy any of the Milestones (defined below);

(b)     the entry of an order of this Court terminating, reversing, adversely amending, supplementing, staying, or vacating any material provisions of this Interim Order without the prior consent of the ABL Agent;

(c)     the appointment in any of the Cases of a trustee or an examiner with expanded powers, without the prior written consent of the ABL Agent;

(d)     a filing by any Debtor or any other person[7] of any motion, pleading, application, or adversary proceeding challenging the validity, enforceability, perfection or priority

---

[7] For any filing by any person other than any Debtor or an officer or employee of any Debtor, such filing shall only constitute a Termination Event to the extent that such person continues to prosecute any such motion, pleading, or

of the liens securing the ABL Prepetition Obligations or asserting any other cause of action against and/or with respect to the ABL Credit Agreement or any other ABL Loan Document, the ABL Collateral (as defined below), the ABL Agent, or any of the other ABL Parties (or if the Debtors support any such motion, pleading, application, or adversary proceeding commenced by any other party);

        (e)      the dismissal of any of the Cases or the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code, without the prior written consent of the ABL Agent;

        (f)      the failure of the Debtors to perform, in any material respect, any of the terms, provisions, conditions, covenants, or obligations under this Interim Order;

        (g)      failure by the Debtors to comply with the Budget, subject to the Permitted Variances, without the prior written consent of the ABL Agent;

        (h)      the resignation, denial of retention, or termination of Brian Teets, of Alvarez and Marsal North America, LLC, as chief restructuring officer, without the prior written consent (which writing may be in e-mail) of the ABL Agent;

        (i)      the payment of, or application by the Debtors for authority to pay, any prepetition claim unless in accordance with the Budget, without the prior written consent (which writing may be in e-mail) of the ABL Agent;

        (j)      failure to make required payments of the ABL Prepetition Obligations consistent with the Budget, without the prior written consent of the ABL Agent (which writing may be in e-mail);

---

adversary proceeding without dismissal for thirty (30) days after service thereof on the ABL Agent, or any of the ABL Parties.

(k)     any material misrepresentation by any Debtor in the financial reporting or certifications to be provided by the Debtors to the ABL Agent under the ABL Loan Documents and/or this Interim Order;

(l)     the entry of an order by the Court terminating or modifying the exclusive right of any Debtor to file a plan pursuant to section 1121 of the Bankruptcy Code, without the prior written consent of the ABL Agent;

(m)     the entry of an order in the Cases charging any of the Prepetition Collateral (as defined below) under section 506(c) or limiting the extent or priority of the liens in favor of the ABL Agent pursuant to section 552(b) of the Bankruptcy Code or the commencement of other actions that are materially adverse to any of the ABL Agent or ABL Parties or their respective rights and remedies under the ABL Loan Documents in the Cases (or any order requiring any of the ABL Agent or ABL Parties to be subject to the equitable doctrine of "marshalling") without the prior written consent of the ABL Agent;

(n)     without the prior written consent of the ABL Agent, the obtaining after the Petition Date of credit or the incurring of indebtedness that is, in each case, (A) secured by a security interest, mortgage or other lien on all or any portion of the ABL Collateral (as defined below) that is equal or senior in priority to any security interest, mortgage or other lien of the ABL Agent, including, without limitation, any ABL Adequate Protection Liens; or (B) entitled to priority administrative status that is equal or senior in priority to that granted to the ABL Agent, including, without limitation, the ABL Adequate Protection Superpriority Claim;

(o)     any Debtor, including any subsidiary or affiliate thereof, promotes or otherwise markets discounting of ABL Collateral (as defined below) offered for sale other than in the normal course of business or in a manner consistent with the Inventory Disposition Agreement;

(p) without the prior written consent of the ABL Agent, the termination, discontinuation or suspension of the Sales under the Inventory Disposition Agreement;

(q) the automatic stay shall be modified, reversed, revoked or vacated in a manner that has a material adverse impact on the rights and interests of the ABL Agent or any of the ABL Parties, without the prior written consent of the ABL Agent; or

(r) the Court shall have entered an order avoiding, disallowing, subordinating or recharacterizing any claim, lien, or interest held by the ABL Agent or any of the ABL Parties arising under the ABL Loan Documents.

6. <u>Milestones</u>. Each Debtor shall satisfy or cause to be satisfied, as applicable, each of the following conditions (each a "<u>Case Milestone</u>" and collectively the "<u>Case Milestones</u>").

(a) <u>Case Milestones</u>:

i. Within 3 business days of the Petition Date, the Court shall have entered interim orders in form and substance, in each case, satisfactory to the ABL Agent, (i) authorizing the Debtors to use Cash Collateral on terms and conditions acceptable to the ABL Agent; (ii) confirming that the Inventory Disposition  Agreement is effective and authorizing the continuation of the Sales; and (iii) authorizing the Debtors to use and continue to operate the Cash Management System;[8]

ii. Within 30 days of the Petition Date, the Court shall have entered final orders in form and substance, in each case, satisfactory to the ABL Agent, authorizing the

---

[8] As used in this Interim Order, the term "Cash Management System" has the meaning ascribed to it in the *Motion of the Debtors for Interim and Final Orders (I) Authorizing Continued Use of Cash Management System, (II) Authorizing Continued Use of Existing Business Forms, (III) Authorizing the Continuation of Intercompany Transactions, (IV) Granting Administrative Priority Status to Post-Petition Intercompany Transactions, (V) Authorizing Use of Prepetition Bank Accounts, Account Control Agreements, and Certain Payment Methods, and (VI) Temporarily Suspending the Requirements of 11 U.S.C. § 345(b)* filed contemporaneously with the Motion.

274254374 v2

Debtors: (i) to use Cash Collateral on terms and conditions acceptable to the ABL Agent; (ii) to assume the Debtors' Inventory Disposition Agreement; (iii) to continue the Sales; and (iv) to use and continue to operate the Cash Management System; and

iii. Prior to the entry of the Final Order, the Debtors shall have retained a consultant reasonable acceptable to the Debtors and the ABL Agent for and in connection with a sale process pursuant to section 363 of the Bankruptcy Code or otherwise with respect to all intellectual property[9] owned by the Debtors.

7. Adequate Protection.

(a) Adequate Protection Liens.

(i) *ABL Adequate Protection Liens*. Subject to the Carve Out, as adequate protection for and to the extent of the amount of diminution in value from and after the Petition Date, of its interests in the Prepetition Collateral, including, without limitation, the aggregate amount of Cash Collateral used by any Debtor on a dollar for dollar basis, the imposition of the automatic stay, the subordination to and funding of the Carve Out to the extent set forth herein, and any other reason provided for under the Bankruptcy Code which causes diminution in the value of its interests in the Prepetition Collateral (such diminution, a "Diminution in Value"), the ABL Agent, for the benefit of itself and the other ABL Parties is hereby granted, pursuant to sections 361 and 363 of the Bankruptcy Code, valid, binding, enforceable and perfected replacement and additional liens upon and security interests in all property, real or personal, whether now existing or hereafter arising and wherever located, tangible and intangible, of each of the Debtors, including: (a) all cash, cash equivalents, deposit accounts, securities accounts, accounts, other receivables (including credit card receivables), chattel paper, contract rights, inventory (wherever located), instruments, documents (including documents of title), securities

---

[9] As used herein, "intellectual property" includes, but is not limited to, all franchise rights, trade names, trademarks, servicemarks, copyrights, patents, license rights, or other intellectual property, whether or not included in the definition of "intellectual property" under the Bankruptcy Code

(whether or not marketable) and investment property (including all of the issued and outstanding capital stock of each of its subsidiaries), hedge agreements, furniture, fixtures, equipment, goods, franchise rights, trade names, trademarks, servicemarks, copyrights, patents, license rights, intellectual property, general intangibles (including, for the avoidance of doubt, payment intangibles), rights to the payment of money (including tax refunds, and any other extraordinary payments), supporting obligations, guarantees, letter of credit rights, insurance policies (and any and all claims thereunder) and the proceeds thereof, commercial tort claims, causes of action, and all substitutions, indemnification rights, all present and future intercompany debt, books and records related to the foregoing, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds; (b) all proceeds of owned and leased real property; (c) subject to entry of a Final Order, the proceeds of any avoidance actions brought pursuant to Chapter 5 of the Bankruptcy Code or applicable state law equivalents; (d) subject to entry of a Final Order, proceeds of the Debtors' rights under section 506(c) (solely to the extent such rights result from the use of Postpetition Collateral (as defined below), and are, therefore, enforceable against parties other than the ABL Agent or the ABL Parties) and 550 of the Bankruptcy Code; and (e) all Prepetition Collateral that was not otherwise subject to valid, perfected, enforceable, and unavoidable liens on the Petition Date (collectively, to the extent acquired after the Petition Date, the "Postpetition Collateral" and, together with the Prepetition Collateral and the Cash Collateral, the "ABL Collateral") to the extent of any Diminution in Value (the "ABL Adequate Protection Liens").  The ABL Adequate Protection Liens shall be junior and subordinate only to (A) the ABL Prepetition Liens on the Prepetition Collateral, and (B) the Carve Out, and shall otherwise be senior to all other security interests in, liens on, or claims against any asset of a Debtor and all rights of payment of all other parties. Other than as set forth herein, the ABL Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or with any lien or security interest previously or hereinafter granted in any of the Cases or any Successor Case (as defined below). The ABL Adequate Protection Liens shall be valid, binding and enforceable against any trustee or other estate representative appointed in any Case, upon the conversion of any of the

Cases to a case under chapter 7 of the Bankruptcy Code (collectively, "Successor Cases") and/or upon the dismissal of any Case or Successor Case. For the avoidance of doubt, the ABL Adequate Protection Liens shall not include any leasehold interests of the Debtors but shall include the proceeds from any sale, termination, or other disposition of any leasehold interests of the Debtors.

(ii) *Term Loan Adequate Protection Liens*. Subject to the Carve Out and the Intercreditor Agreement, as adequate-protection for and solely to the extent of the amount of Diminution in Value from and after the Petition Date of its interests in the Prepetition Collateral, the Term Agent, for the benefit of itself and the Term Lenders, is hereby granted, pursuant to sections 361 and 363 of the Bankruptcy Code, valid, binding, enforceable and perfected replacement liens upon and security interests in the ABL Collateral (the "Term Loan Adequate Protection Liens" and, together with the ABL Adequate Protection Liens, the "Adequate Protection Liens"). The Term Loan Adequate Protection Liens shall be junior and subordinate only to (A) the ABL Prepetition Liens on the Prepetition Collateral, (B) the Term Loan Prepetition Liens on the Prepetition Collateral, (C) the ABL Adequate Protection Liens on the Postpetition Collateral and (D) the Carve Out, and shall otherwise be senior to all other security interests in, liens on, or claims against any asset of a Debtor and all rights of payment of all other parties. Other than as set forth herein, the Term Loan Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or with any lien or security interest previously or hereinafter granted in any of the Cases or any Successor Case. The Term Loan Adequate Protection Liens shall be valid, binding and enforceable against any trustee or other estate representative appointed in any Case or Successor Case and/or upon the dismissal of any Case or Successor Case. For the avoidance of doubt, the Term Loan Adequate Protection Liens shall not include any leasehold interests of the Debtors but shall include the proceeds from any sale, termination, or other disposition of any leasehold interests of the Debtors.

(b) Section 507(b) Priority Claims.

(i) *ABL Adequate Protection Superpriority Claim*. Subject only to the Carve Out, as adequate-protection for the Diminution in Value of its interest in the Prepetition

Collateral, the ABL Agent, for the benefit of itself and the other ABL Parties, is hereby granted as and to the extent provided by sections 503 and 507(b) of the Bankruptcy Code, an allowed superpriority administrative-expense claim in the Cases and any successor bankruptcy case (the "ABL Adequate Protection Superpriority Claim"). The ABL Adequate Protection Superpriority Claim shall be subordinate to the Carve Out solely to the extent set forth in this Interim Order, but otherwise shall have priority over all administrative expense claims, including administrative expenses of the kinds specified in or ordered pursuant to sections 503(b) and 507(b) of the Bankruptcy Code, and unsecured claims against each Debtor and each Estate now existing or hereafter arising, of any kind or nature whatsoever.

(ii)    *Term Loan Adequate Protection Superpriority Claim*. As adequate protection for the Diminution in Value of its interest in the Prepetition Collateral, the Term Agent, for the benefit of itself and the Term Loan Lenders, is hereby granted as and to the extent provided by sections 503 and 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in the Cases and any successor bankruptcy case (the "Term Loan Adequate Protection Superpriority Claim" and together with the ABL Adequate Protection Superpriority Claim, the "Adequate Protection Superpriority Claims"). The Term Loan Adequate Protection Superpriority Claim shall be subordinate to (A) the Carve Out solely to the extent set forth in this Interim Order and (B) the ABL Adequate Protection Superpriority Claim, but otherwise shall have priority over all administrative expense claims, including administrative expenses of the kinds specified in or ordered pursuant to sections 503(b) and 507(b) of the Bankruptcy Code, and unsecured claims against each Debtor and each Estate now existing or hereafter arising, of any kind or nature whatsoever.

(c)    Default Interest.  At all times during the Cases, as adequate protection, the Secured Prepetition Obligations shall bear interest at the applicable Default Rate (as defined and set forth in the Prepetition Documents), and interest and letter-of-credit fees (if any) pursuant to the ABL Credit Agreement shall be paid to the ABL Agent in cash on a monthly basis.

(d) <u>Mandatory Paydown of ABL Prepetition Obligations</u>.  Commencing September 6, 2022, and continuing on the first business day of each week thereafter until the ABL Repayment Date ,[10] the Debtors shall provide the ABL Agent with a calculation of the amount of all cash then on deposit in the Debtors' deposit accounts in excess of the Operating Disbursements and Non-Operating Disbursements for the following 2-week period as provided in the Budget plus the excess (if any) of the Projected Operating Disbursements over the Actual Operating Disbursements for the immediately preceding 2-week period (the "<u>Excess Proceeds</u>"), upon receipt of which the ABL Agent is hereby authorized and directed to transfer the Excess Proceeds from the Debtors' operating account and apply such Excess Proceeds in permanent reduction and repayment of the Secured Obligations (as defined in the ABL Credit Agreement) in accordance with the terms of the ABL Loan Documents and this Interim Order; <u>provided</u>, that for any sales, dispositions, or proceeds of casualty or other insurance of all ABL Collateral outside the ordinary course of the Debtors' business (excluding sales or dispositions of ABL Collateral with respect to all sales conducted pursuant to the terms of the Inventory Disposition Agreement) and all other sales of ABL Collateral pursuant to section 363 of the Bankruptcy Code, such net sale proceeds (including net of any restructuring, sale, success, or other transaction fee of the counsel, investment bankers, or financial advisors of the Debtors and the Committee (if appointed) that are due and payable in connection with the closing of such sale), in each case, shall be paid to the ABL Agent on the first business day following receipt and applied in permanent reduction and repayment of the Secured Obligations (as defined in the ABL Credit Agreement) until all such Secured Obligations are Paid in Full in accordance with the Prepetition Documents; <u>provided further</u>, that the foregoing payments shall be without prejudice to the rights of any third party, including, without limitation, any Committee, to seek an appropriate remedy from the Court upon a successful Challenge, solely in accordance with and to the extent set forth in Paragraph 19(b); <u>provided further</u>, that upon request by the Debtors, the ABL Agent may, in its sole discretion and

---

[10] As used herein, "ABL Repayment Date" means the date upon which the ABL Agent receives Payment in Full.

without further notice or order of the Court, reduce the amount of Excess Proceeds to be transferred an applied in accordance with this Paragraph 7(d) for any given week.

(e) <u>Disposition of ABL Collateral</u>.  The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the ABL Collateral outside the ordinary course of business other than in connection with the Inventory Disposition Agreement as in effect and in the manner such agreement is implemented as of the Petition Date, without the written consent (which writing may be e-mail) of (i) the ABL Agent (and no such consent shall be implied, from any other action, inaction or acquiescence by the ABL Agent) to such disposition and the terms thereof, and (ii) in each case, an order of this Court.

(f) <u>Payment and Review of Lender Fees and Expenses</u>.  As further adequate protection, the Debtors shall pay all fees and expenses under the ABL Loan Documents, including, without limitation, the non-refundable payment to the ABL Agent of the reasonable and documented attorney fees and expenses and any other professional fees and expenses whether incurred before or after the Petition Date and whether incurred in connection with the ABL Loan Documents, the ABL Collateral, or the Cases; <u>provided</u> that the Debtors shall pay all such reasonable fees and expenses within ten (10) calendar days of delivery of a summary statement or invoice for such fees and expenses (it being understood that such statements or invoices shall not be required to be maintained in any particular format, nor shall any such counsel or other professional be required to file any interim or final fee applications with the Court or otherwise seek Court's approval of any such payments) to the Debtors, the U.S. Trustee and the Committee (if appointed), unless, within such ten (10) calendar day period, the Debtors, the U.S. Trustee or the Committee (if appointed) serve a written objection upon the requesting party, in which case, the Debtors shall pay only such amounts that are not the subject of any objection and the withheld amount subsequently agreed by the objecting parties or ordered by the Court to be paid.  Any and all amounts paid by the Debtors pursuant to this Paragraph 7(f) are deemed permitted uses of Cash Collateral and not subject to the Budget or the Budget Compliance Report.  Notwithstanding the foregoing, the Debtors are authorized to pay upon entry of this Interim Order all reasonable and

documented fees, costs and out-of-pocket expenses of the ABL Agent incurred on or prior to such date without the need for any professional engaged by the ABL Agent to first deliver a copy of its invoice as provided herein. No attorney, advisor, or other professional to any ABL Agent shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court.

(g)     Cash Management. The Debtors shall maintain their cash management arrangements in a manner consistent with that described in the applicable "first day" order.

(h)     ABL Indemnity Reserve. Upon the payment in cash to the ABL Agent in the amount of all then outstanding ABL Prepetition Obligations, the Debtors are further authorized and directed to pay to the ABL Agent, for the benefit of the ABL Parties, $250,000 into a noninterest bearing account maintained at JPMorgan Chase Bank, N.A. (the "Prepetition ABL Indemnity Reserve") to secure contingent indemnification, reimbursement, or similar continuing obligations arising under or related to the ABL Loan Documents (the "Prepetition ABL Indemnity Obligations"). The Prepetition ABL Indemnity Reserve shall secure all costs, expenses, and other amounts (including reasonable and documented attorneys' fees) owed to or incurred by the ABL Agent related to the ABL Loan Documents, the ABL Prepetition Obligations, or the ABL Prepetition Liens granted to the ABL Agent, as applicable, whether in these Cases or independently in another forum, court, or venue. The Prepetition ABL Indemnity Obligations shall be secured, and not subject to the Carve Out, by a first lien on the Prepetition ABL Indemnity Reserve and the funds therein and by a lien on the ABL Collateral (subject in all respects to this Interim Order). Payments of Prepetition ABL Indemnity Obligations shall be made as and when they arise and paid with the Prepetition ABL Indemnity Reserve, without further notice to or consent from the Debtors, the committee (if appointed), or any other parties in interest and without further order of this Court. The ABL Agent (for itself and on behalf of the other ABL Parties) shall retain and maintain the ABL Prepetition Liens and the ABL Adequate Protection Liens granted to the ABL Agent as security for the amount of any Prepetition ABL Indemnity Obligations not capable of being satisfied from application of the funds on deposit in the Prepetition ABL

Indemnity Reserve. The Prepetition ABL Indemnity Reserve shall be released to the Debtors at such time as the ABL Prepetition Obligations are Paid in Full.

(i)     Further Adequate Protection Reservation.  Notwithstanding anything to the contrary set forth herein, the adequate protection granted by this Interim Order is without prejudice to the ABL Agent's and the Term Agent's (subject to the Intercreditor Agreement) rights to seek additional adequate protections from this Court.  The use of Cash Collateral pursuant to the terms and conditions of this Interim Order and in accordance with the Budget shall not be deemed to be a consent by the ABL Agent to any other or further use of Cash Collateral or to the use of any Cash Collateral in any amount or for any purpose in excess of the amount set forth in the Budget for each such type of disbursement.

8.      Limits on Lender Liability.  Subject to entry of a Final Order, nothing in this Interim Order, the ABL Loan Documents, the Term Loan Documents or any other documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the ABL Agent or other ABL Parties or the Term Agent or other Term Parties of any liability for any claims arising from any activities by the Debtors in the operation of their businesses or in connection with the administration of these Cases.  The ABL Parties and Term Parties shall not, solely by reason of having made loans under the ABL Loan Documents and Term Loan Documents (respectively), be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.*, as amended, or any similar federal or state statute).  Nothing in this Interim Order shall in any way be construed or interpreted to impose or allow the imposition upon the ABL Parties or Term Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors.

9.      Insurance. At all times the Debtors shall maintain casualty and loss insurance coverage for the ABL Collateral on substantially the same basis as maintained prior to the Petition

Date. The Debtors shall provide the ABL Agent with proof of the foregoing within five (5) days of written demand and give the ABL Agent reasonable access to Debtors' records in this regard.

10. **Proof of Claim**. Notwithstanding any notice, motion or other order entered by this Court in relation to the establishment of a bar date in any of the Cases or any Successor Case to the contrary, the ABL Agent and Term Agent will not be required to file proofs of claim or requests for approval of administrative expenses in any Case or Successor Case. The acknowledgment by Debtors of the ABL Prepetition Obligations and the Term Loan Prepetition Obligations and the liens, rights, priorities and protections granted to or in favor of the ABL Agent and the Term Agent in respect of the Prepetition Collateral as set forth herein and in the ABL Loan Documents and Term Loan Documents (respectively) shall be deemed a timely filed proof of claim on behalf of the ABL Agent and the Term Agent (respectively) in each of the Cases or Successor Cases.

11. **Relief from the Automatic Stay**.

(a) The automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified to permit (i) the Debtors to implement and perform the terms of this Interim Order and (ii) the Debtors to create, and the ABL Agent and Term Agent to perfect, the ABL Adequate Protection Liens, the Term Loan Adequate Protection Liens, and other Liens granted hereunder. The ABL Agent and Term Agent shall not be required to file UCC financing statements or other instruments with any other filing authority to perfect the Liens, including the ABL Adequate Protection Liens, the Term Loan Adequate Protection Liens, granted by this Interim Order or to take any other actions to perfect such Liens, which shall be deemed automatically perfected by the docketing of this Interim Order by the Clerk of the Court, and deemed to be effective as of the Petition Date. If, however, the ABL Agent or Term Agent shall elect for any reason to file, record or serve any such financing statements or other documents with respect to such Liens, then the Debtors shall execute same upon request and the filing, recording or service thereof (as the case may be) shall be deemed to have been made at the time of the commencement of this Case on the Petition Date.

274254374 v2

(b)     The automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified without further notice, application or order of the Court to the extent necessary to permit the ABL Agent to perform any act authorized or permitted under or by virtue of this Interim Order, the ABL Credit Agreement, the other ABL Loan Documents, as applicable, including, without limitation, (i) to implement the use of Cash Collateral authorized by this Interim Order, (ii) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the ABL Collateral, including any adequate-protection liens, and (iii) to assess, charge, collect, advance, deduct and receive payments with respect to the ABL Prepetition Obligations, including, without limitation, all interests, fees, costs and expenses permitted under the ABL Loan Documents, and apply such payments to the ABL Prepetition Obligations.

(c)     In addition, and without limiting the foregoing, upon the occurrence of the Termination Date, and after providing five (5) days (the "Remedies Notice Period") prior written notice to (i) the Court, (ii) counsel for the Debtors, (iii) the Term Agent, (iv) counsel for the Committee (if appointed), and (v) the U.S. Trustee, and in accordance with the terms of this Interim Order, the ABL Agent shall be entitled to an expedited hearing before this Court to occur immediately following the expiration of the Remedies Notice Period in order to obtain relief from the automatic stay provisions of section 362 of the Bankruptcy Code to take any action and exercise all rights and remedies against the ABL Collateral provided under this Interim Order, the ABL Loan Documents or applicable law that the ABL Agent may deem appropriate in its sole discretion to proceed against and realize upon the ABL Collateral or any other assets or properties of Debtors' Estates upon which the ABL Agent have been or may hereafter be granted liens or security interests to obtain the full and indefeasible repayment of all Secured Obligations (as defined in the ABL Credit Agreement).  For the avoidance of doubt, the Remedies Notice Period shall run simultaneously from the date that ABL Agent provides any notice to the Debtors, the U.S. Trustee, the Term Agent, and if appointed, the Committee, that is required pursuant to Paragraph 4 of this Interim Order.

12.     <u>Reversal, Modification, Vacatur, or Stay</u>. Any reversal, modification, vacatur, or stay of any or all of the provisions of this Interim Order (other than in accordance with the Final Order) shall not affect the validity or enforceability of any Adequate Protection Liens, the Adequate Protection Superpriority Claims, or any claim, lien, security interest, or priority authorized or created hereby with respect to any Adequate Protection Liens or the Adequate Protection Superpriority Claims, incurred prior to the effective date of such reversal, modification, vacatur, or stay.  Notwithstanding any reversal, modification, vacatur, or stay (other than in accordance with the Final Order), (a) this Interim Order shall govern, in all respects, any use of Cash Collateral or Adequate Protection Liens, or Adequate Protection Superpriority Claims incurred by the Debtors prior to the effective date of such reversal, modification, vacatur, or stay, and (b) the Agents shall be entitled to all the benefits and protections granted by this Interim Order with respect to any such use of Cash Collateral or such Adequate Protection Liens, or Adequate Protection Superpriority Claims incurred by the Debtors.

13.     <u>No Waiver for Failure to Seek Relief</u>. The failure or delay of the ABL Agent or the Term Agent to seek relief or otherwise exercise any of its rights and remedies under this Interim Order, the ABL Credit Agreement, the Term Loan Credit Agreement, the Intercreditor Agreement, the other Prepetition Documents or applicable law, as the case may be, shall not constitute a waiver of any rights hereunder, thereunder, or otherwise, by the ABL Agent or the Term Agent.

14.     <u>Section 507(b) Reservation</u>. Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the ABL Agent and the Term Agent (subject to the Intercreditor Agreement), hereunder is insufficient to compensate for any Diminution in Value during the Cases.  Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by the ABL Agent or the Term Agent that the adequate protection granted herein does in fact adequately protect the ABL Agent and the Term Agent against any Diminution in Value of their interests in the Prepetition Collateral (including the Cash Collateral).

274254374 v2

15.     Marshalling.  Upon entry of the Final Order, in no event shall the ABL Agent and the Term Agent be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the Prepetition Collateral.

16.     552(b) "Equities of the Case" Waiver.  Subject to the entry of a Final Order granting such relief, the ABL Agent and the Term Agent shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the ABL Agent and the Term Agent with respect to proceeds, products, offspring or profits of any of the Prepetition Collateral, as applicable.

17.     506(c) Claims.  Subject to entry of the Final Order granting such relief, no costs or expenses of administration which have or may be incurred in the Cases shall be charged against the ABL Agent and the Term Agent, their claims or the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code without the prior written consent of the ABL Agent or the Term Agent, as applicable, and no such consent shall be implied from any other action, inaction or acquiescence by the ABL Agent or the Term Agent, as applicable.

18.     Limitation on Use of Collateral.  The Cash Collateral shall not, directly or indirectly, be used to pay administrative expenses of the Debtors and or the Estates except for those operating expenses (including the statutorily required fees payable to the Office of the United States Trustee pursuant to 28 U.S.C. §1930 and any interest due thereon) that are set forth in the Budget or with the prior written consent (which writing may be in e-mail) of the ABL Agent.  The Cash Collateral and the Carve Out may not be used in connection with or to finance in any way: (a) any action, suit, arbitration, proceeding, application, motion or other litigation of any type (i) for the payment of any services rendered by the professionals retained by any Debtor or Committee, or other representative of any Estate, in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment, determination, declaration or similar relief invalidating, setting aside, avoiding or subordinating, in whole or in part, any ABL Prepetition Liens, ABL Prepetition Obligations,

Term Loan Prepetition Liens or Term Loan Prepetition Obligations, (ii) for monetary, injunctive or other affirmative relief against the ABL Agent, the ABL Lenders, the Term Agent, the Term Lenders or any other Secured Parties, or any Prepetition Collateral, or (iii) preventing, hindering or otherwise delaying the exercise by the ABL Agent, the ABL Lenders, Term Agent, Term Lenders or other Secured Parties of any rights under this Interim Order; (b) objecting to or challenging in any way the claims, liens, or interests held by or on behalf of the ABL Agent or the Term Agent; (c) asserting, commencing or prosecuting any claims or causes of action whatsoever, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against the ABL Agent, the ABL Lenders, the Term Agent, the Term Lenders or any other Secured Parties, or the Prepetition Liens; or (d) prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the Prepetition Liens, the Secured Prepetition Obligations or any other rights or interest of the ABL Agent, the ABL Lenders, the Term Agent, the Term Lenders and/or the other Secured Parties; provided, that up to an aggregate amount of $50,000 of (x) the proceeds of the Prepetition Collateral (including Cash Collateral) or (y) the Carve Out may be used by the Committee during the Challenge Period to investigate (but not to prosecute or challenge) the claims and liens of the ABL Agent and the Term Agent and other potential claims, counterclaims, causes of action or defenses against the ABL Agent, the ABL Lenders, the Term Agent, the Term Lenders and/or the other Secured Parties.

19. <u>Effect of Debtors' Stipulations on Third Parties</u>.

(a) Except to the extent that a Challenge (as defined below) is timely and properly commenced during the Challenge Period (as defined below) by a party with requisite standing that results in a final and non-appealable judgment or order of this Court that is inconsistent with a stipulation contained herein, then subject to this Paragraph 19, each stipulation, admission, and agreement contained in this Interim Order including, without limitation, the Debtors' Stipulations, shall be binding upon the Debtors, their Estates and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for any of

the Debtors) under all circumstances and for all purposes, and the Debtors are deemed to have irrevocably waived and relinquished all Challenges (as defined herein) as of the Petition Date.

(b) Nothing in this Interim Order shall prejudice the rights of any Committee or any other party in interest, if granted standing by the Court, to seek, solely in accordance with the provisions of this Paragraph 19, to assert claims against the Secured Parties, on behalf of the Debtors or the Debtors' creditors or to otherwise challenge the Debtors' Stipulations, including, but not limited to those in relation to (i) the validity, extent, priority, or perfection of the security interests, and liens of the Secured Parties, (ii) the validity, allowance, priority, or amount of the Secured Prepetition Obligations, or (iii) any liability of the Secured Parties with respect to anything arising from the Prepetition Documents. Notwithstanding the immediately preceding sentence, any Committee or any other party in interest must, after obtaining standing approved by the Court, commence an adversary proceeding raising such claim, objection, or challenge, including, without limitation, any claim or cause of action against the ABL Agent, the Term Agent, the ABL Lenders, the Term Lenders, or the other Secured Parties (each, a "Challenge") no later than (i) the date that is seventy-five (75) days after the entry of this Interim Order, or (ii) with respect to any chapter 11 trustee appointed in the Cases, or any chapter 7 trustee appointed in any Successor Case, prior to the expiration of the period set forth in subsection (i) above, no later than the date that is the later of (A) fourteen (14) days after the appointment of such trustee or (B) the expiration of the time periods set forth in the foregoing subsection (i) above (collectively, the "Challenge Period"). The Challenge Period may only be extended with the written consent of the ABL Agent or the Term Agent, as applicable, prior to the expiration of the Challenge Period, and for the avoidance of doubt, any such extension shall only apply to the specific party as to whom any such extension may be granted and to the specific Agent that grants any such extension on behalf of itself and the applicable lenders that the specific Agent acts on behalf of. Only those parties in interest who commence a Challenge within the Challenge Period may prosecute such Challenge. As to (x) any parties in interest, including any Committee, who fail to file a Challenge within the Challenge Period, or if any such Challenge is filed and overruled or otherwise finally resolved or adjudicated

in favor of the Agents, or (y) any and all matters that are not expressly the subject of a timely Challenge: (1) any and all such Challenges by any party (including, without limitation, any Committee, any chapter 11 trustee, any examiner or any other estate representative appointed in the Debtors' Cases, or any chapter 7 trustee, any examiner or any other estate representative appointed in any Successor Case), shall be deemed to be forever waived and barred, (2) all of the findings, Debtors' Stipulations, waivers, releases, affirmations, and other stipulations as to the priority, extent, and validity as to the claims, liens, and interests of the Secured Parties, as applicable, shall be of full force and effect and forever binding upon the Debtors' Estates and all creditors, interest holders, and other parties in interest in the Cases and any Successor Cases, and (3) any and all claims or causes of action against the Secured Parties, as applicable, relating in any way to the Prepetition Documents, Secured Prepetition Obligations, and Prepetition Liens, as applicable, shall be released by the Debtors' Estates, all creditors, interest holders, and other parties in interest in the Cases and any Successor Cases. Notwithstanding the foregoing, to the extent a motion seeking standing to commence a Challenge is filed prior to the expiration of the Challenge Period and the Challenge Period expires before such motion is ruled upon by this Court, the Challenge Period shall be extended to the first hearing date available after the filing of such motion within the requisite notice period provided under the applicable Local Bankruptcy Rules and the Bankruptcy Rules.

(c)     Nothing in this Interim Order vests or confers on any person (as defined in the Bankruptcy Code), including any Committee, standing or authority to pursue any cause of action belonging to the Debtors or their Estates, including, without limitation, any Challenge with respect to the Prepetition Documents or the Secured Prepetition Obligations.

20.     <u>Binding Effect</u>. This Interim Order shall be binding upon and inure to the benefit of the ABL Agent (for itself and on behalf of the ABL Lenders), the Term Agent (for itself and on behalf of the Term Lenders) and the Debtors and their respective successors and assigns, including, without any limitation, any trustee, responsible officer, examiner, estate administrator or representative, or similar person appointed in a case for the Debtors under any chapter of the

Bankruptcy Code. No rights are entered under this Interim Order for the benefit of any creditor of the Debtors, any other party in interest in the Cases, or any other person or entities, or any direct, indirect or incidental beneficiaries thereof.

21.     <u>Reporting</u>. The Debtors shall provide the Agents with a weekly inventory report, and such other information as the ABL Agent may from time to time reasonably request.

22.     <u>Inspection</u>. Without limiting the rights of the ABL Agent contained in this Interim Order, the ABL Agent shall have the right, upon three (3) days written notice to the Debtors, at any time during the Debtors' normal business hours, to inspect, audit, examine, check, make copies of or extract from the non-privileged books, accounts, checks, orders, correspondence and other records of the Debtors, and to inspect, audit and monitor all or any part of the ABL Collateral, and the Debtors shall make all of same reasonably available to the ABL Agent and its representatives, for such purposes.

23.     <u>Limitation of Liability</u>. In permitting the use of the Prepetition Collateral or in exercising any rights or remedies as and when permitted pursuant to this Interim Order, subject to entry of the Final Order, neither the ABL Agent nor any ABL Party nor the Term Agent nor any Term Party shall be deemed to be in control of the operations of the Debtors. Furthermore, nothing in this Interim Order shall in any way be construed or interpreted to impose or allow the imposition upon the ABL Agent or the other ABL Parties or the Term Agent or the other Term Parties of any liability for any claims arising from the prepetition or post-petition activities of any of the Debtors and their respective affiliates (as defined in section 101(2) of the Bankruptcy Code).

24.     <u>Effectiveness</u>. The terms and conditions of this Interim Order shall be (i) effective and immediately enforceable upon its entry by the Clerk of the Court notwithstanding any potential application of Bankruptcy Rule 6004(h), 7062, 9014 or otherwise; and (ii) not be stayed absent (a) an application by a party in interest for such stay in conformance with such Bankruptcy Rule 8007, and (b) a hearing upon notice to the Notice Parties.

25.     <u>Survival</u>. The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (a) confirming any plan of

reorganization in any of the Cases, (b) converting any of the Cases to a case under chapter 7 of the Bankruptcy Code, (c) dismissing any of the Cases or Successor Cases, or (d) pursuant to which this Court abstains from hearing any of the Cases or Successor Cases; provided, that in the event there is later entered any order providing for either the conversion or dismissal of any one or more of the Cases, such order(s) shall make express provision, among other things, for the survival and continuing force and effect of the terms and provisions of this Interim Order notwithstanding such conversion or dismissal. The terms and provisions of this Interim Order, as well as the Adequate Protection Superpriority Claims, the Adequate Protection Liens, and all other claims and liens (if any) granted by this Interim Order, shall (a) continue in this or any other superseding case under the Bankruptcy Code, (b) be valid and binding on all parties in interest, including, without limitation, any Committee, chapter 11 trustee, examiner or chapter 7 trustee, and (c) continue, notwithstanding any dismissal of any Case or Successor Case (and any such order of dismissal shall so provide), and such claims and liens shall maintain their priority as provided by this Interim Order until (x) in the case of the ABL Parties, the ABL Prepetition Obligations are Paid in Full and (y) in the case of the Term Parties, the Term Loan Prepetition Obligations are Paid in Full.

26.  Discharge Waiver.  Subject to the entry of the Final Order, the Debtors expressly stipulate, and the Court finds and adjudicates that, neither the Adequate Protection Superpriority Claims nor the Adequate Protection Liens shall be discharged by the entry of an order confirming any plan of reorganization, notwithstanding section 1142(d) of the Bankruptcy Code, unless (i) the order is entered with the prior written consent of the ABL Agent or the Term Agent, as applicable, or (ii) the Adequate Protection Superpriority Claims have been Paid in Full on or before the effective date of such plan.

27.  Rights Preserved.  Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the ABL Agent's or Term Agent's to seek any other relief in respect of the Debtors (including the right to seek additional adequate protection); (b) the ABL Agent's or Term Agent's right to seek the payment by the Debtors of post-petition interest pursuant to section 506(b) of the

-42-

Bankruptcy Code; or (c) any rights of the ABL Agent or Term Agent under the Bankruptcy Code or under non-bankruptcy law, including the right to (i) request modification of the automatic stay pursuant to section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Cases or Successor Cases, conversion of any of the Cases to cases under chapter 7 of the Bankruptcy Code, or appointment of a chapter 11 trustee or an examiner (with or without expanded powers), (iii) propose a chapter 11 plan or plans of reorganization, subject to section 1121 of the Bankruptcy Code, or (iv) consent in writing prior to the sale of all or any portion of the ABL Collateral outside the ordinary course of the Debtors' business (and no such consent shall be implied or construed by any action or inaction by either the ABL Agent or Term Agent). Other than as expressly set forth in this Interim Order, any other rights claims or privileges (whether legal, equitable or otherwise) of the ABL Agent and Term Agent are preserved.

28. <u>Application of Proceeds</u>. All proceeds of the ABL Collateral received by the ABL Agent, and any other amounts or payments received by the ABL Agent in respect of the ABL Prepetition Obligations, may be applied or deemed to be applied by the ABL Agent in such manner and priority as the ABL Agent may determine in its sole discretion, in accordance with this Interim Order, the ABL Loan Documents, and the Intercreditor Agreement. Without limiting the generality of the foregoing, the Debtor is authorized without further order of this Court to pay or reimburse the ABL Agent for future costs and expenses, including, without limitation, all professional fees, consultant fees and legal fees and expenses paid or incurred by the ABL Agent as provided in this Interim Order and the ABL Loan Documents, all of which shall be and are included as part of the principal amount of the ABL Prepetition Obligations and secured by the ABL Collateral.

29. <u>Final Hearing</u>. A hearing on the Debtors' request for a Final Order approving the Motion is scheduled for [_____], 2022, at [____] a.m./p.m. (prevailing Eastern time) before the Honorable _____, United States Bankruptcy Judge at the United States Bankruptcy Court for the District of Delaware. On or before [_____], 2022, the Debtors shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final

Hearing (the "Final Hearing Notice"), together with copies of this Interim Order and the Motion, on: (a) the Notice Parties and any other parties that have been given notice of the Interim Hearing; (b) any party which has filed prior to such date a request for notices with this Court; (c) counsel for a Committee (if appointed); (d) the Securities and Exchange Commission; (e) the Internal Revenue Service; (f) all state taxing authorities in the states in which the Debtors have tax liabilities; (g) all parties known to the Debtors to be asserting liens against or security interest in any of the collateral that is addressed in this Order; (h) the U.S. Attorney's Office; (i) the Delaware Attorney General; and (j) the United States Trustee. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Court no later than **[_____], 2022, at [__]:[__] [a.m.]/[p.m.] (ET)**, which objections shall be served on or before such date by: (i) counsel to the Debtors, Cooley LLP, 55 Hudson Yards, New York, New York 10001-2157, Attn: Michael Klein (mklein@cooley.com), Potter Anderson & Corroon LLP, 1313 N. Market Street, 6th Floor, Wilmington, Delaware 19801, Attn: Christopher M. Samis (csamis@potteranderson.com); (ii) counsel to the ABL Agent, Morgan Lewis & Bockius LLP, One Federal Street, Boston, MA 02110, Attn: Julia Frost-Davies (julia.frost-davies@morganlewis.com) and Marc R. Leduc (mar.leduc@morganlewis.com), and Richards Layton & Finger, P.A., One Rodney Square, 920 North King St., Wilmington, DE 19801, Attn: Mark D. Collins (collins@rlf.com) and Zachary I. Shapiro (shapiro@rlf.com); (iii) counsel to the Term Agent, Joshua M. Spencer (joshua.spencer@hklaw.com) and Phillip W. Nelson (phillip.nelson@hklaw.com), Holland & Knight, 150 N. Riverside Plaza, Suite 2700, Chicago, Illinois 60606, Holland & Knight; and (iv) Office of the United States Trustee, 844 N. King Street, Room 2207, Lockbox 35, Wilmington DE, 19801, Attn: Timothy J. Fox, Jr. (timothy.fox@usdoj.gov).

30.     Controlling Effect of this Interim Order. To the extent any provision of this Interim Order conflicts or is inconsistent with any provision of the Motion, the provisions of this Interim Order shall control to the extent of such conflict.

31.     <u>General Authorization</u>.  The Debtors, the ABL Agent, the Term Agent and the other Secured Parties are authorized to take any and all actions necessary to effectuate the relief granted in this Interim Order.

32.     <u>Retention of Jurisdiction</u>.  The Court has and will retain jurisdiction to enforce this Interim Order in accordance with its terms and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Interim Order.

**EXHIBIT 1**

**BUDGET**

**Packable**
**Cash Collateral Budget**
Summary Forecast

| ($ in 000s) | Fcst Sep-22 9/3 1 | Fcst Sep-22 9/10 2 | Fcst Sep-22 9/17 3 | Fcst Sep-22 9/24 4 | Fcst Oct-22 10/1 5 | Fcst Oct-22 10/8 6 | Fcst Oct-22 10/15 7 | Fcst Oct-22 10/22 8 | Fcst Oct-22 10/29 9 | Fcst Nov-22 11/5 10 | Fcst Nov-22 11/12 11 | Fcst Nov-22 11/19 12 | Fcst Nov-22 11/26 13 | Total 13 Week Budget | Fcst Remaining 12/3 - 2/18 14 - 25 | Total 25 Week Budget |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| *Operating Receipts* | | | | | | | | | | | | | | | | |
| Product Receipts | $ 6,089 | $ 1,209 | $ 6,873 | $ 1,262 | $ 7,105 | $ 1,260 | $ 8,169 | $ 1,260 | $ 8,169 | $ 1,255 | $ 8,007 | $ 1,015 | $ 5,867 | $ 57,538 | $ 11,107 | $ 68,646 |
| Misc. Receipts | - | 379 | 4,500 | 1,000 | - | - | - | - | - | - | - | - | - | 5,879 | 636 | 6,515 |
| **Total Operating Receipts** | **6,089** | **1,588** | **11,373** | **2,262** | **7,105** | **1,260** | **8,169** | **1,260** | **8,169** | **1,255** | **8,007** | **1,015** | **5,867** | **63,417** | **11,743** | **75,160** |
| *Cumulative Total Operating Receipts* | *$ 6,089* | *$ 7,677* | *$ 19,050* | *$ 21,312* | *$ 28,417* | *$ 29,677* | *$ 37,846* | *$ 39,105* | *$ 47,274* | *$ 48,529* | *$ 56,536* | *$ 57,551* | *$ 63,417* | *$ 63,417* | *$ 75,160* | *$ 75,160* |
| *Operating Disbursements* | | | | | | | | | | | | | | | | |
| Payroll | (898) | (474) | (598) | (449) | (599) | (449) | (449) | (449) | (449) | (623) | (425) | (639) | (614) | (7,114) | (1,812) | (8,926) |
| Shipping / Freight | (1,198) | (1,198) | (1,198) | (1,198) | (802) | (802) | (802) | (802) | (802) | (802) | (802) | (802) | (802) | (12,011) | (1,900) | (13,911) |
| Marketing | - | - | - | - | - | - | - | - | - | - | - | - | - | - | (20) | (20) |
| Utility Deposit | (135) | - | - | - | - | - | - | - | - | - | - | - | - | (135) | 135 | - |
| General Expenses [1] | (481) | (392) | (392) | (381) | (116) | (136) | (106) | (505) | (101) | (3,664) | (77) | (77) | (78) | (6,505) | (317) | (6,822) |
| Occupancy | (739) | - | - | - | (357) | - | - | - | - | (357) | - | - | - | (1,454) | - | (1,454) |
| **Total Operating Disbursements** | **(3,451)** | **(2,064)** | **(2,188)** | **(2,028)** | **(1,875)** | **(1,387)** | **(1,357)** | **(1,756)** | **(1,352)** | **(5,446)** | **(1,304)** | **(1,517)** | **(1,494)** | **(27,219)** | **(3,914)** | **(31,133)** |
| **Net Operating Cash Flows** | **2,638** | **(476)** | **9,186** | **234** | **5,230** | **(127)** | **6,812** | **(496)** | **6,817** | **(4,191)** | **6,703** | **(503)** | **4,373** | **36,199** | **7,829** | **44,028** |
| *Non-Operating Cash Flow* | | | | | | | | | | | | | | | | |
| Interest & Debt Service Fees | (314) | - | - | - | (290) | - | - | - | - | (291) | - | - | - | (895) | (516) | (1,411) |
| UCC Professional Fees | - | - | (25) | (25) | (44) | (44) | (44) | (44) | (44) | (44) | (44) | (44) | (44) | (493) | (306) | (750) |
| All Other Professional Fees | (654) | (654) | (654) | (654) | (517) | (517) | (667) | (517) | (517) | (578) | (578) | (578) | (504) | (7,585) | (3,035) | (10,620) |
| **Total Non-Operating Disbursements** | **(654)** | **(654)** | **(679)** | **(679)** | **(850)** | **(561)** | **(711)** | **(561)** | **(561)** | **(912)** | **(621)** | **(621)** | **(548)** | **(8,924)** | **(3,857)** | **(12,781)** |
| *Cumulative Total Disbursements* | *$ (4,419)* | *$ (7,137)* | *$ (10,003)* | *$ (12,710)* | *$ (15,435)* | *$ (17,383)* | *$ (19,450)* | *$ (21,766)* | *$ (23,679)* | *$ (30,037)* | *$ (31,962)* | *$ (34,101)* | *$ (36,143)* | *$ (36,143)* | *$ (43,914)* | *$ (43,914)* |
| **Net Cash Flow** | **$ 1,670** | **$ (1,130)** | **$ 8,507** | **$ (445)** | **$ 4,380** | **$ (688)** | **$ 6,102** | **$ (1,057)** | **$ 6,257** | **$ (5,104)** | **$ 6,082** | **$ (1,124)** | **$ 3,825** | **$ 27,275** | **$ 3,972** | **$ 31,247** |
| **Cumulative Cash Flow** | **$ 1,670** | **$ 540** | **$ 9,047** | **$ 8,602** | **$ 12,982** | **$ 12,294** | **$ 18,396** | **$ 17,339** | **$ 23,596** | **$ 18,492** | **$ 24,574** | **$ 23,450** | **$ 27,275** | **$ 27,275** | **$ 31,247** | **$ 31,247** |
| *Debtor Cash Roll* | | | | | | | | | | | | | | | | |
| Beginning Debtor Cash | 1,922 | 3,592 | 2,462 | 5,073 | 4,295 | 3,927 | 3,240 | 4,141 | 3,085 | 7,905 | 2,801 | 4,093 | 2,969 | 1,922 | 2,837 | 1,922 |
| (+/-) Net Cash Flow | 1,670 | (1,130) | 8,507 | (445) | 4,380 | (688) | 6,102 | (1,057) | 6,257 | (5,104) | 6,082 | (1,124) | 3,825 | 27,275 | 3,972 | 31,247 |
| (-) ABL Paydown | - | - | (5,896) | (333) | (4,748) | - | (5,200) | - | (1,436) | - | (4,790) | - | (3,957) | (26,359) | (6,809) | (33,168) |
| **Ending Debtor Cash Balance** | **$ 3,592** | **$ 2,462** | **$ 5,073** | **$ 4,295** | **$ 3,927** | **$ 3,240** | **$ 4,141** | **$ 3,085** | **$ 7,905** | **$ 2,801** | **$ 4,093** | **$ 2,969** | **$ 2,837** | **$ 2,837** | **$ -** | **$ -** |
| *ABL Balance* | | | | | | | | | | | | | | | | |
| Beginning ABL | 50,325 | 50,325 | 50,325 | 44,429 | 44,097 | 39,349 | 39,349 | 34,149 | 34,149 | 32,713 | 32,713 | 27,922 | 27,922 | 50,325 | 23,965 | 50,325 |
| (-) Paydown | - | - | (5,896) | (333) | (4,748) | - | (5,200) | - | (1,436) | - | (4,790) | - | (3,957) | (26,359) | (6,809) | (33,168) |
| **Ending ABL** | **$ 50,325** | **$ 50,325** | **$ 44,429** | **$ 44,097** | **$ 39,349** | **$ 39,349** | **$ 34,149** | **$ 34,149** | **$ 32,713** | **$ 32,713** | **$ 27,922** | **$ 27,922** | **$ 23,965** | **$ 23,965** | **$ 17,157** | **$ 17,157** |
| *Memo: Professional Fee Carve Out* | *$ 654* | *$ 1,308* | *$ 1,986* | *$ 2,665* | *$ 3,226* | *$ 3,786* | *$ 4,347* | *$ 4,907* | *$ 5,468* | *$ 3,957* | *$ 4,578* | *$ 5,199* | *$ 5,747* | *$ 5,747* | *$ -* | *$ -* |
| *Memo: Inventory Balance* | *$ 75,652* | *$ 71,869* | *$ 68,086* | *$ 64,303* | *$ 59,805* | *$ 55,306* | *$ 50,808* | *$ 46,310* | *$ 41,812* | *$ 37,459* | *$ 33,977* | *$ 31,108* | *$ 29,316* | *$ 29,316* | *$ -* | *$ -* |