## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Pack Liquidating, LLC *et al.*,[1] | Case No. 22-10797 (CTG) |
| Debtors. | (Jointly Administered) |

## FINAL ORDER (I) AUTHORIZING USE OF
## CASH COLLATERAL AND AFFORDING ADEQUATE PROTECTION;
## (II) MODIFYING AUTOMATIC STAY; AND (III) GRANTING RELATED RELIEF

Upon the motion (the "Motion") of the above-captioned debtors and debtors in possession (collectively, the "Debtors") in the above-captioned jointly administered chapter 11 cases (collectively, the "Cases"), seeking entry of a final order (this "Final Order") pursuant to sections 105, 361, 362, 363 and 507 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2, of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") and unless otherwise ordered by this Court, *inter alia*:[2]

(a) authorizing the Debtors' use of Cash Collateral (as defined below), subject to the terms of this Final Order, and granting adequate protection to the ABL Agent, ABL Lenders, the Term Agent and the Term Lenders (each as defined below) in respect of their rights under the ABL Loan Documents or the Term Loan Documents (each

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: Pack Liquidating, LLC (6932); GV Liquidating LLC (1513); PM Liquidating, LLC (6006); PP Liquidating, LLC (6676); PV Liquidating, LLC (1172); and AB Liquidating, LLC (8582). The location of the Debtors' service address in these chapter 11 cases is c/o Cooley LLP, 55 Hudson Yards, New York, NY 10001.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion, the *Interim Order (I) Authorizing Use of Cash Collateral and Affording Adequate Protection; (II) Modifying Automatic Stay; (III) Scheduling a Final Hearing; and (IV) Granting Related Relief* (the "Interim Order") [D.I. 53], the ABL Credit Agreement or the Term Loan Agreement (each, as defined herein), as applicable.

as defined below), as applicable, and their respective interests in the Prepetition Collateral (as defined below), if any, pursuant to sections 105, 361, 362, 363, and 507 of title 11 of the United States Code (the "Bankruptcy Code") with respect to any proven Diminution in Value (as defined below) of such rights and interests, if any, on and after the Petition Date (as defined below);

(b)     vacating and modifying the automatic stay arising under section 362 of the Bankruptcy Code in accordance with the provisions hereof to the extent necessary to implement and effectuate the terms and provisions of this Final Order; and

(c)     granting certain related relief.

The Court having considered the Motion, the First Day Declaration, the Interim Order, and the evidence submitted and argument made at the final hearing held on May 9, 2023 (the "Final Hearing"); and notice of the Final Hearing having been given in accordance with the Interim Order, Bankruptcy Rules 2002, 4001, and 9014, and all applicable Local Bankruptcy Rules; and the Final Hearing to consider the final relief requested in the Motion having been held and concluded; and all objections, if any, to the final relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and it appearing to the Court that granting the relief set forth herein is fair and reasonable, in the best interests of the Debtors, their estates, and their creditors and equity holders, and essential for the continued administration of the Debtors' estates; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE FINAL HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

A.      Interim Order.  On August 30, 2022, the Court entered the Interim Order.  Between entry of the Interim Order and entry of this Final Order (the "Interim Cash Collateral Period"), the Debtors, the Committee, the ABL Agent and the Term Agent entered into multiple stipulations extending the consensual use of cash collateral and such parties have acted in accordance with the authority granted in the Interim Order, as extended.

B.      Committee Investigation.  Following entry of the Interim Order, the Committee conducted an investigation (the "Committee ABL Investigation") into certain historic transactions related to the Debtors, including with respect to the ABL Agent, the ABL Lenders, and certain related parties including JP Morgan Securities, LLC, in its capacity as the Debtors' prepetition investment banker ("JPMS").  Based on this investigation, the Committee has determined there is an insufficient basis to bring a Challenge (as defined in the Interim Order), to otherwise challenge the Debtors' Stipulations contained in Paragraph C of this Final Order, or to bring or assert any estate claims,  demands, damages, expenses, actions or causes of action of any kind relating to the ABL Facility, the ABL Prepetition Obligations, the ABL Loan Documents, and/or the transactions contemplated thereunder against the ABL Agent, the ABL Lenders, all other ABL Parties and any affiliates thereof (including JPMS) or any of their respective successors, assigns, affiliates, subsidiaries, parents, officers, shareholders, directors, employees, attorneys and/or agents (collectively, "ABL Challenge Parties").

C.      The Debtors' Stipulations.  After consultation with their attorneys and financial advisors, and without prejudice to the rights of parties in interest as set forth in paragraph 18 herein, the Debtors, on their behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree as follows (paragraphs C(i) through C(xi) below are referred to herein, collectively, as the "Debtors' Stipulations"):

(i)     Cash Collateral.  Any and all cash of the Debtors, including cash and other amounts on deposit or maintained in any bank account or accounts of the Debtors and any amounts generated by the collection of accounts receivable, the sale of inventory, or other disposition of the Prepetition Collateral (as defined below) existing as of the Petition Date or arising or acquired after the Petition Date, together with all proceeds of any of the foregoing, is cash collateral within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral") of the ABL Agent and the Term Agent.  For the avoidance of doubt, Cash Collateral includes any proceeds from the sale of inventory or any other Prepetition Collateral (as defined below).  Pursuant to section 363(c)(2) of the Bankruptcy Code, the Debtors are not able to use Cash Collateral without the ABL Agent's consent (and the deemed consent of the Term Agent) or this Court's authorization after notice and a hearing. The ABL Agent is willing to consent (and the Term Agent is deemed to consent) to the Debtors' use of the Cash Collateral, expressly limited to, and conditioned upon, the terms and conditions specified in this Final Order.

(ii)     ABL Facility.  Pursuant to that certain *Credit Agreement* dated as of July 24, 2020 (as amended, restated, supplemented, or otherwise modified from time to time, the "ABL Credit Agreement," and collectively with the Loan Documents (as defined in the ABL Credit Agreement), the Forbearance Agreement (as defined in the ABL Credit Agreement) and any other agreements and documents executed or delivered in connection with the ABL Credit Agreement, each as may be amended, restated, supplemented, waived or otherwise modified from time to time, the "ABL Loan Documents"), among (a) Packable Holdings, LLC f/k/a Entourage Commerce, LLC ("Packable Holdings") and Pharmapacks, LLC (collectively, the "ABL Borrowers"), (b) the guarantors party thereto (the "ABL Guarantors"), (c) JPMorgan Chase Bank, N.A. (in its capacities as Administrative Agent, Sole Bookrunner, and Sole Lead Arranger, the "ABL Agent"), and

(d) the lenders party thereto (collectively, including the ABL Agent and the other "Secured Parties" (as defined in the ABL Credit Agreement), the "<u>ABL Lenders</u>," and the ABL Lenders and the ABL Agent, together, the "<u>ABL Parties</u>"), the ABL Lenders provided revolving credit loans, and other financial accommodations to, and issued letters of credit for the account of, the Prepetition ABL Borrowers pursuant to the ABL Loan Documents (the "<u>ABL Facility</u>") in an aggregate principal amount not to exceed $60 million as of the Petition Date.

   (iii) <u>ABL Prepetition Obligations</u>. As of the Petition Date, the aggregate principal amount outstanding under the ABL Facility was not less than approximately $50,324,912.24, inclusive of not less than $282,696.62 of issued, and outstanding letters of credit (collectively, together with accrued and unpaid interest, bankers' acceptances, any reimbursement obligations (contingent or otherwise) in respect of letters of credit and bankers' acceptances, any fees, expenses and disbursements (including attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), treasury, cash management, bank product (including purchase card obligations outstanding under the ABL Facility in an amount not less than $2,810,367.73 (the "<u>P-Card Obligations</u>")) and derivative obligations, indemnification obligations, guarantee obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the ABL Borrowers' or the ABL Guarantors' obligations pursuant to, or secured by, the ABL Loan Documents, including all "Secured Obligations" as defined in the ABL Credit Agreement, and all interest, fees, prepayment premiums, costs and other charges allowable under section 506(b) of the Bankruptcy Code, the "<u>ABL Prepetition Obligations</u>").

(iv)     ABL Prepetition Liens.  In connection with the ABL Credit Agreement, the Debtors entered into that certain Pledge and Security Agreement, dated as of July 24, 2020 (as amended from time to time prior to the Petition Date, the "ABL Security Agreement"), by and between the Debtors, as Grantors, and the ABL Agent.  Pursuant to the ABL Security Agreement and other ABL Loan Documents, each Debtor granted senior liens on and security interests in substantially all of such Debtor's assets (the "Prepetition Collateral") to the ABL Agent for the benefit of itself and the ABL Lenders as security for the ABL Prepetition Obligations (the "ABL Prepetition Liens"); provided however that for all purposes and uses in the Interim Order and this Final Order, and notwithstanding the expiration of the Challenge Period solely with respect to an ABL Challenge, the Debtors, the Committee and the ABL Agent preserve and reserve all rights regarding the inclusion of the Debtors' leasehold interests, interests in joint ventures, including the Debtors' Trade Service Equity and equity interests in Digitally Native Brands (both as defined in the ABL Loan Documents), commercial tort claims, Avoidance Actions, and any proceeds of such assets in the term Prepetition Collateral and the treatment and allocation of such assets and proceeds therefrom under a chapter 11 plan of liquidation.

(v)     Validity, Perfection, and Priority of ABL Prepetition Liens and ABL Prepetition Obligations.  The Debtors acknowledge and agree that as of the Petition Date (a) the ABL Prepetition Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, the ABL Parties for fair consideration and reasonably equivalent value; (b) the ABL Prepetition Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to certain liens senior by operation of law (solely to the extent such liens were valid, non-avoidable, and senior in priority to the ABL Prepetition Liens as of the Petition Date and properly perfected prior to the

Petition Date or perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code) or otherwise permitted by the ABL Loan Documents (the "ABL Permitted Liens"); (c) the ABL Prepetition Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors enforceable in accordance with the terms of the applicable ABL Loan Documents; (d) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the ABL Prepetition Liens or ABL Prepetition Obligations exist, and no portion of the ABL Prepetition Liens or ABL Prepetition Obligations is subject to any challenge or defense including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the ABL Parties or any of their respective successors, assigns, affiliates, subsidiaries, parents, officers, shareholders, directors, employees, attorneys and agents, past, present and future, and their respective heirs, predecessors, successors and assigns arising out of, based upon or related to the ABL Facility, the ABL Loan Documents and/or the transactions contemplated hereunder or thereunder; (f) the Debtors have waived, discharged, and released any right to challenge any of the ABL Prepetition Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the liens securing the ABL Prepetition Obligations; and (g) the ABL Prepetition Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

(vi) <u>Term Loan Facility</u>. Pursuant to that certain *Term Loan Credit Agreement* dated as of April 14, 2022 (as amended, restated or otherwise modified from time to time, the

"Term Loan Agreement," and collectively with any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, or otherwise modified from time to time, the "Term Loan Documents," and together with the ABL Loan Documents, the "Prepetition Documents"), among (a) Packable Holdings, as the borrower, (b) Alter Domus (US) LLC, as administrative agent (the "Term Agent," and together with the ABL Agent, the "Agents"), (c) the guarantors party thereto and (d) the lenders party thereto (the "Term Lenders," and collectively with the Term Agent, the "Term Parties," and together with the ABL Parties, the "Secured Parties"), the Term Lenders provided term loans to the Packable Holdings (the "Term Loan Facility," and together with the ABL Facility, the "Secured Facilities").

(vii)     Term Loan Prepetition Obligations.  The Term Loan Facility provided the Debtors with commitments to provide term loans in the aggregate principal amount of up to approximately $95,367,935, comprised of $86,652,935 in Tranche A loans ("Term Loan A") and $8,715,000 in bridge loans ("Bridge Term Loan").  As of the Petition Date, the aggregate principal amount outstanding under the Term Loan Facility was $95,367,935 (collectively, together with accrued and unpaid interest, any fees, expenses and disbursements (including, without limitation, attorneys' fees, accountants' fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), indemnification obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Debtors' obligations pursuant to the Term Loan Documents, including all "Obligations" as defined in the Term Loan Agreement, the "Term Loan Prepetition Obligations," and together with the ABL Prepetition Obligations, the "Secured Prepetition Obligations").

(viii)    <u>Term Loan Liens</u>.  In connection with the Term Loan Credit Agreement, the Debtors entered into that certain Second Lien Pledge and Security Agreement, dated as of April 14, 2022 (as amended from time to time prior to the Petition Date, the "<u>Term Loan Security Agreement</u>"), by and between Debtors, as Grantors, and the Term Agent.  Pursuant to the Term Loan Security Agreement and other Term Loan Documents, each Debtor granted a second priority security interest in the Prepetition Collateral to the Term Agent for the benefit of itself and the Term Lenders as security for the Term Loan Obligations (the "<u>Term Loan Prepetition Liens</u>," and together with the ABL Prepetition Liens, the "<u>Prepetition Liens</u>"), immediately junior to the ABL Prepetition Liens.

(ix)    <u>Validity, Perfection, and Priority of Term Loan Prepetition Liens and Term Loan Prepetition Obligations</u>.  The Debtors acknowledge and agree that as of the Petition Date (a) the Term Loan Prepetition Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, the Term Parties for fair consideration and reasonably equivalent value; (b) the Term Loan Prepetition Liens are subject and/or subordinate only to (I) certain liens senior by operation of law (solely to the extent such liens were valid, non-avoidable, and senior in priority to the Term Loan Prepetition Liens as of the Petition Date and properly perfected prior to the Petition Date or perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code) or otherwise permitted by the Term Loan Documents (the "<u>Term Loan Permitted Liens</u>," and together with the ABL Permitted Liens, the "<u>Permitted Liens</u>"),[4] and (II) the ABL Prepetition Liens, and senior in priority

---

[4]  For the avoidance of doubt, as used in this Final Order, no reference to the ABL Permitted Liens, the Term Loan Permitted Liens or the Permitted Liens shall refer to or include the ABL Prepetition Liens or the Term Loan Prepetition Liens.  Furthermore, nothing herein shall constitute a finding or ruling by this Court that any alleged Permitted Lien is valid, senior, enforceable, prior, perfected or non-avoidable.  Moreover, nothing shall prejudice the rights of any party-in-interest, including, but not limited to the Debtors, the ABL Agent, the Term Agent, the ABL Lenders, the Term Lenders or a Committee, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Permitted Lien.  The right of a seller of goods to reclaim such goods under section 546(c) of the

over any and all other liens on the Prepetition Collateral; (c) the Term Loan Prepetition Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors enforceable in accordance with the terms of the applicable Term Loan Documents; (d) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Term Loan Prepetition Liens or Term Loan Prepetition Obligations exist, and no portion of the Term Loan Prepetition Liens or Term Loan Prepetition Obligations is subject to any challenge or defense including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Term Parties or any of their respective successors, assigns, affiliates, subsidiaries, parents, officers, shareholders, directors, employees, attorneys and agents, past, present and future, and their respective heirs, predecessors, successors and assigns arising out of, based upon or related to the Term Loan Facility, the Term Loan Documents and/or the transactions contemplated hereunder or thereunder; (f) the Debtors have waived, discharged, and released any right to challenge any of the Term Loan Prepetition Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the liens securing the Term Loan Prepetition Obligations; and (g) the Term Loan Prepetition Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

---

Bankruptcy Code is not a Permitted Lien, rather, any such alleged claim arising or asserted as a right of reclamation (whether asserted under section 546(c) of the Bankruptcy Code or otherwise) shall have the same rights and priority with respect to the ABL Prepetition Liens and Term Loan Prepetition Liens as such claim had on the Petition Date.

(x)     <u>Priority of Prepetition Liens; Intercreditor Agreement</u>.  The ABL Agent, the Term Agent and others entered into that certain Intercreditor Agreement dated as of April 14, 2022 (as may be further amended, restated, supplemented, or otherwise modified in accordance with its terms, the "<u>Intercreditor Agreement</u>").   The Intercreditor Agreement is a "subordination agreement" within the meaning of section 510(a) of the Bankruptcy Code and, among other things, (A) confirms the senior priority of the security interests of the ABL Agent in the Collateral (as defined in the Intercreditor Agreement) to the junior priority security interests of the Term Agent in such Collateral regardless of whether such Collateral exists prior to or after the Petition Date, (B) subject to certain conditions and limitations (as provided in the Intercreditor Agreement), provides that the Term Agent shall be deemed to have consented to the use of Cash Collateral by the Debtors upon notice of the ABL Agent's consent to such use of Cash Collateral, and (C) provides certain other rights and obligations between the ABL Agent, on the one hand, and the Term Agent, on the other hand, relating to the Prepetition Collateral and these Cases.

(xi)     <u>Default by the Debtors</u>.  The Debtors acknowledge and stipulate that: (A) they have been, since January 1, 2022, and remain in default of their obligations under the ABL Loan Documents, and that an Event of Default has occurred under the ABL Loan Documents, and that since April 14, 2022, interest has accrued, and will continue to accrue, on the ABL Prepetition Obligations at the default rate set forth in the ABL Credit Agreement; and (B) they have been, since August 15, 2022, and remain in default of their obligations under the Term Loan Documents, and that an Event of Default has occurred under the Term Loan Documents, and that since August 29, 2022, interest has accrued, and will continue to accrue, on the Term Loan Prepetition Obligations with respect to the Term Loan A at the default rate set forth in the Term Loan Agreement, and that on August 15, 2022 the Bridge Term Loan matured pursuant to the

terms of the Term Loan Agreement, and that since August 15, 2022, interest has accrued, and will continue to accrue, on the Term Loan Prepetition Obligations with respect to the Bridge Term Loan at the default rate set forth in the Term Loan Agreement.

D.     Adequate Protection.    Each of the ABL Agent, the Term Agent and the other Secured Parties are entitled to the adequate protection provided in this Final Order pursuant to sections 361, 362 and 363 of the Bankruptcy Code.    Based on the Motion and on the record presented to the Court, the terms of the proposed adequate protection arrangements and of the use of the Prepetition Collateral, including the Cash Collateral, are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of Cash Collateral.

E.     Sections 506(c) and 552(b) of the Bankruptcy Code; Doctrine of Marshalling.    In consideration for the ABL Agent's, the ABL Lenders', the Term Agent's and the Term Lenders' agreements (a) to subordinate the Adequate Protection Superpriority Claims (as defined below), the Adequate Protection Liens (as defined below), and the Prepetition Liens to the Carve Out (as defined below) and (b) to permit the Debtors' the use of Cash Collateral to fund the Budget (as defined below), in each case solely to the extent set forth in this Final Order, the ABL Agent, the ABL Lenders, the Term Agent and the Term Lenders are entitled, upon entry of this Final Order, to the benefits of a waiver of: (i) the provisions of section 506(c) of the Bankruptcy Code, (ii) any "equities of the case" claims under section 552(b) of the Bankruptcy Code; and (iii) the doctrine of "marshalling" or any other similar doctrine with respect to any of the Prepetition Collateral.

F.     Good Cause. Good cause has been shown for entry of this Final Order, and the entry of this Final Order is in the best interests of the Debtors, the Estates and their stakeholders. The terms of the Debtors' use of Cash Collateral and proposed adequate protection arrangements, as

set forth in this Final Order, are fair and reasonable under the circumstances and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties. The Debtors, the ABL Agent, and the Committee have all agreed to the terms set forth in this Final Order.

G. <u>Good Faith</u>. The Debtors' use of Cash Collateral in accordance with the terms hereof has been negotiated in good faith and at arms'-length among the Debtors, the ABL Agent, and the consent of the ABL Agent to the Debtors' use of Cash Collateral in accordance with the terms hereof shall be deemed to have been made in "good faith."

H. <u>Notice</u>. Upon the record presented to the Court at the Final Hearing, and under the circumstances set forth therein, requisite notice of the Motion and the relief requested thereby and this Final Order has been provided in accordance with all applicable Bankruptcy Rules 4001(b) to the Notice Parties, which notice was appropriate under the circumstances and sufficient for the entry of this Final Order; and no further notice of, or hearing on, the entry of this Final Order is necessary or required.

Based upon the foregoing findings and conclusions, the Motion, the First Day Declaration, the Interim Order and the record before the Court with respect to the Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED that:**

1.  <u>Motion Granted</u>.  The Motion is granted on a final basis as set forth herein.  The use of Cash Collateral on a final basis is authorized subject to the terms and conditions set forth in the Budget and this Final Order.  Any objection to the entry of this Final Order, to the extent not withdrawn, waived or resolved, is hereby overruled.

2.  <u>Interim Cash Collateral Period</u>.  During the Interim Cash Collateral Period, the Debtors, the Committee, the ABL Agent, the other ABL Parties, the Term Agent and the other Term Parties acted in accordance with the Interim Order and the extensions thereof and all actions taken thereunder are hereby ratified and approved.

3.  <u>Authorization to Use Cash Collateral</u>.  The Debtors are authorized on a final basis to use Cash Collateral solely in accordance with and to the extent set forth in the Budget (as defined below) and this Final Order during the period commencing on the date of this Final Order through the Termination Date (as defined below) (the "<u>Cash Collateral Period</u>") in an amount not to exceed at any time (i) with respect to "Operating Disbursements" line items, the aggregate amount of disbursements projected in the "Operating Disbursements" line items of the Budget (the "<u>Projected Operating Disbursements</u>") and (ii) with respect to "Non-Operating Disbursements" line items, the aggregate amount of disbursements projected in the "Non-Operating Disbursements," line items of the Budget, in each case from the Petition Date through the date of measurement (the "<u>Cash Collateral Amount</u>").

4.  <u>Budget</u>.

(a)  The Debtors may use Cash Collateral during the Cash Collateral Period, up to the Cash Collateral Amount only to pay the amount and type of expenses set forth in the cash collateral budget attached as **<u>Exhibit 1</u>** hereto (as the same may be updated from time to time with the prior written consent of the ABL Agent, the "<u>Budget</u>") during the periods covered by the Budget in which such expenses are projected to be paid.  The Budget shall depict, on a weekly basis and line item basis (i) projected cash receipts, (ii) projected disbursements (including ordinary course operating expenses, non-operating expenses, bankruptcy-related expenses (including professional fees of the Debtors' and the Committee's professionals and advisors), asset

sales and any other fees and expenses), (iii) projected paydowns to the ABL Agent for the benefit of the ABL Lenders, and (iv) net cash flow. Each Budget delivered to the ABL Agent shall be accompanied by such customary supporting documentation as reasonably requested by the ABL Agent and shall be prepared in good faith based upon assumptions the Debtors believe to be reasonable at the time of delivery. A copy of any Budget or updated Budget, once approved by the ABL Agent, shall be delivered by the Debtors simultaneously to the counsel for the Committee, the Term Agent, and the U.S. Trustee. All Cash Collateral use must be strictly in accordance with the terms of the Budget.

      5.    <u>Carve Out</u>.

      (a)    <u>Carve Out</u>. As used in this Order, the "Carve Out" means the sum of (i) all fees required to be paid (a) to the Clerk of the Court and (b) to the Office of the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate, pursuant to 31 U.S.C. § 3717; (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code; and (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses, of any Professional (as defined below) of the Debtors and the Committee, other than any restructuring, sale, success, or other transaction fee of such Professionals (including the Consultant) (the "<u>Allowed Professional Fees</u>"), not to exceed the lesser of (x) the actual amounts, and (y) for fees incurred after the date of the Final Order, the aggregate amounts set forth for all Professionals in the Budget for such period, incurred by counsel or financial advisors retained by the Debtors or the Committee pursuant to section 327, 328, 363 or 1103 of the Bankruptcy Code (the "<u>Professionals</u>") at any time before or on the first business day following delivery by the ABL Agent of the Carve Out Trigger Notice (exclusive of any "success" or other similar fee). For purposes of the foregoing, "<u>Carve Out Trigger Notice</u>" shall mean a written notice delivered by email (or other electronic means) by the ABL Agent to lead counsel for the Debtors, the U.S. Trustee, the Term Agent and the Committee, which notice may be delivered following the occurrence and during the continuation of a Termination Event, respectively, stating that the Post-Carve Out Reserve (as

defined below) has been invoked. The ABL Agent and the Debtors acknowledge that the original Carve-Out contained in the Budget attached to the Interim Order was set without the input of the Committee, which was not formed until after entry of the Interim Order. The Budget attached to this Final Order shall provide for (i) the payment of all fees incurred by the Debtors' and Committee's Professionals through entry of this Final Order (subject to the rights of all parties to object to any Professional's fees in accordance with the Interim Compensation Order; and (ii) a go forward budget for Professionals.

   (b) <u>Carve Out Reserves</u>.

    (i) Upon entry of this Final Order, the Debtors shall utilize cash on hand to fund a reserve account in an amount equal to (a) the unpaid actual and accrued fees incurred by the Debtors' and Committee's Professionals from the Petition Date through the date of the entry of this Final Order; and (b) the amounts set forth in the Budget for such Professionals the "<u>Pre-Carve Out Trigger Notice Reserves</u>"). The Debtors shall deposit and hold the Pre-Carve Out Trigger Notice Reserves in a separate, segregated account in trust to pay Allowed Professional Fees for the Debtors' Professionals and the Committee's Professionals prior to any and all other claims, and all payments of Allowed Professional Fees incurred prior to the Termination Date (as defined below) shall be paid therefrom.

    (ii) On the Termination Date (as defined below), the Debtors shall utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a segregated reserve account in an amount not to exceed $250,000 (the "<u>Post-Carve Out Trigger Notice Reserve</u>" and, together with the Pre-Carve Out Trigger Notice Reserve, collectively the "<u>Carve Out Reserves</u>"), which amounts shall be held in a segregated account to pay any Allowed Professional Fees incurred after the first business day following delivery by the ABL Agent of the Carve Out Trigger Notice, to the extent allowed at any time whether by interim order, procedural order or otherwise, subject to the terms and conditions contained in this Final Order.

   (c) <u>Application of Carve Out Reserves</u>.

(i)     All funds in the Pre-Carve Out Trigger Notice Reserves shall be used first to pay the obligations set forth in paragraphs (a)(i) through (a)(iii) of the definition of Carve Out set forth above, but not, for the avoidance of doubt, any Allowed Professional Fees incurred on or after the Termination Date.  If the Pre-Carve Out Trigger Reserve has not been reduced to zero following the payment of all obligations set forth in paragraphs (a)(i) through (a)(iii) of the definition of Carve Out incurred on or before the Termination Date, then all remaining funds shall be distributed to the ABL Agent for the benefit of itself and the other ABL Parties.

(ii)     All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the Allowed Professional Fees incurred after the first day following the delivery of a Carve Out Trigger Notice.  If the Post-Carve Out Trigger Notice Reserve has not been reduced to zero following the payment of all Allowed Professional Fees incurred after the date of the Carve Out Trigger Notice, then all remaining funds shall be distributed to the ABL Agent for the benefit of itself and the other ABL Parties.

(d)     For the avoidance of doubt, the Carve Out shall be senior to all liens and claims securing the Prepetition Collateral, the Adequate Protection Liens, and any party's claims under section 507(b) of the Bankruptcy Code, as well as any and all other forms of adequate-protection, liens, or claims securing the Secured Prepetition Obligations, in each case solely to the extent provided herein.

(e)     No Direct Obligation to Pay Allowed Professional Fees.  Neither the ABL Agent, the Term Agent nor any other Secured Party shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional incurred in connection with the Cases or any successor cases under any chapter of the Bankruptcy Code. Nothing in this Final Order or otherwise shall be construed to obligate the any Secured Party in any way, to pay compensation to, or to reimburse expenses of, any Professional or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.  Payment from the Carve Out, whether by or on behalf of the ABL Agent, the Term Agent or other Secured Parties, shall not and

shall not be deemed to reduce the Secured Prepetition Obligations, and shall not and shall not be deemed to subordinate any of any of the ABL Agent's, the Term Agent's or other Secured Parties' liens and security interests in the Prepetition Collateral, any other ABL Collateral (as defined below), the Adequate Protection Superpriority Claims (as defined below) to any junior pre- or post-petition lien, interest or claim in favor of any other party. Nothing in Paragraph 5 of this Final Order shall be construed to obligate the ABL Agent, the Term Agent or any other Secured Party in any way, to directly pay compensation to or to reimburse expenses of any Professional, or to ensure or guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement. Nothing herein, including the inclusion of line items in the Budget for Professionals, shall be construed as consent to the allowance of any particular professional fees or expenses of the Debtors, the Committee, or of any other person or shall affect the right of the ABL Agent, the Term Agent and any of the other Secured Parties to object to the allowance and payment of such fees and expenses. Furthermore, nothing in this Final Order or otherwise shall be construed to increase the Carve Out if allowed fees and/or disbursements are higher in fact than the amounts subject to the Carve Out as set forth in this Final Order.

(f)     <u>Payment of Carve Out</u>.  Any payment or reimbursement made in respect of any Allowed Professional Fees after the Termination Date shall permanently reduce the Carve Out on a dollar-for-dollar basis.

6.     <u>Termination Date</u>.  Immediately upon written notice by the (i) ABL Agent (at all times prior to Payment in Full in cash of all Secured Obligations (as defined in the ABL Credit Agreement)) or (ii) the Term Loan Agent (solely to the extent all Secured Obligations (as defined in the ABL Credit Agreement) have been Paid in Full in cash), to the lead counsel for the Debtors, the U.S. Trustee, the Term Agent, and the Committee that a Termination Event (as defined below) has occurred and is continuing and that the Post-Carve Out Reserve has been invoked (the date such notice is delivered, the "<u>Termination Date</u>"), the Debtors' authorization, and the ABL Agent's consent for the Debtors' use of Cash Collateral pursuant to this Final Order shall terminate. Each of the following events shall be a "<u>Termination Event</u>":

(a)     the entry of an order of this Court terminating, reversing, adversely amending, supplementing, staying, or vacating any material provisions of this Final Order without the prior consent of the ABL Agent;

(b)     the appointment in any of the Cases of a trustee or an examiner with expanded powers, without the prior written consent of the ABL Agent;

(c)     the dismissal of any of the Cases or the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code;

(d)     the failure of the Debtors to perform, in any material respect, any of the terms, provisions, conditions, covenants, or obligations under this Final Order;

(e)     failure by the Debtors to comply with the Budget, without the prior written consent of the ABL Agent;

(f)     in the event that Brian Teets, of Alvarez and Marsal North America, LLC, is not the chief restructuring officer (the "CRO") or another person acceptable to the ABL Agent is not the CRO;

(g)     the payment of, or application by the Debtors for authority to pay, any prepetition claim unless in accordance with the Budget, without the prior written consent (which writing may be in e-mail) of the ABL Agent;

(h)     failure to make required payments of the ABL Prepetition Obligations consistent with the Budget, without the prior written consent of the ABL Agent (which writing may be in e-mail);

(i)     any material misrepresentation by any Debtor in the financial reporting or certifications to be provided by the Debtors to the ABL Agent under the ABL Loan Documents and/or this Final Order;

(j) the entry of an order by the Court terminating or modifying the exclusive right of any Debtor to file a plan pursuant to section 1121 of the Bankruptcy Code, without the prior written consent of the ABL Agent;

(k) the entry of an order in the Cases charging any of the Prepetition Collateral (as defined below) under section 506(c) or limiting the extent or priority of the liens in favor of the ABL Agent pursuant to section 552(b) of the Bankruptcy Code or the commencement of other actions that are materially adverse to any of the ABL Agent or ABL Parties or their respective rights and remedies under the ABL Loan Documents in the Cases (or any order requiring any of the ABL Agent or ABL Parties to be subject to the equitable doctrine of "marshalling") without the prior written consent of the ABL Agent;

(l) without the prior written consent of the ABL Agent, the obtaining after the Petition Date of credit or the incurring of indebtedness that is, in each case, (A) secured by a security interest, mortgage or other lien on all or any portion of the ABL Collateral (as defined below) that is equal or senior in priority to any security interest, mortgage or other lien of the ABL Agent, including, without limitation, any ABL Adequate Protection Liens; or (B) entitled to priority administrative status that is equal or senior in priority to that granted to the ABL Agent, including, without limitation, the ABL Adequate Protection Superpriority Claim;

(m) the automatic stay shall be modified, reversed, revoked or vacated in a manner that has a material adverse impact on the rights and interests of the ABL Agent or any of the ABL Parties, without the prior written consent of the ABL Agent; or

(n) the Court shall have entered an order avoiding, disallowing, subordinating or recharacterizing any claim, lien, or interest held by the ABL Agent or any of the ABL Parties arising under the ABL Loan Documents.

7. Adequate Protection.

(a)     <u>Adequate Protection Liens</u>.

(i)     *ABL Adequate Protection Liens*. Subject to the Carve Out, as adequate protection for and to the extent of the amount of any proven diminution in value from and after the Petition Date, of its interests in the Prepetition Collateral (such diminution, a "<u>Diminution in Value</u>"), the ABL Agent, for the benefit of itself and the other ABL Parties is hereby granted, pursuant to sections 361 and 363 of the Bankruptcy Code, valid, binding, enforceable and perfected replacement and additional liens upon and security interests in all property, real or personal, whether now existing or hereafter arising and wherever located, tangible and intangible, of each of the Debtors, including: (a) all cash, cash equivalents, deposit accounts, securities accounts, accounts, other receivables (including credit card receivables), chattel paper, contract rights, inventory (wherever located), instruments, documents (including documents of title), securities (whether or not marketable) and investment property (including all of the issued and outstanding capital stock of each of its subsidiaries), hedge agreements, furniture, fixtures, equipment, goods, franchise rights, trade names, trademarks, servicemarks, copyrights, patents, license rights, intellectual property, general intangibles (including, for the avoidance of doubt, payment intangibles), rights to the payment of money (including tax refunds, and any other extraordinary payments), supporting obligations, guarantees, letter of credit rights, insurance policies (and any and all claims thereunder) and the proceeds thereof, commercial tort claims, causes of action, and all substitutions, indemnification rights, all present and future intercompany debt, books and records related to the foregoing, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds; (b) all proceeds of owned and leased real property; (c) proceeds of the Debtors' rights under section 506(c) (solely to the extent such rights result from the use of Postpetition Collateral (as defined below), and are, therefore, enforceable against parties other than the ABL Agent or the ABL Parties) and 550 of the Bankruptcy Code; and (e) all Prepetition Collateral that was not otherwise subject to valid, perfected, enforceable, and unavoidable liens on the Petition Date (collectively, to the extent acquired after the Petition Date, the "<u>Postpetition Collateral</u>" and, together with the Prepetition Collateral and the Cash

Collateral, the "<u>ABL Collateral</u>") solely to the extent of any Diminution in Value (the "<u>ABL Adequate Protection Liens</u>"); <u>provided</u> that all proceeds of any avoidance actions brought pursuant to Chapter 5 of the Bankruptcy Code or applicable state law equivalents shall be allocated under a chapter 11 plan of liquidation that is satisfactory in term and substance to the Debtors, the Committee and the ABL Agent. The ABL Adequate Protection Liens shall be junior and subordinate only to (A) the ABL Prepetition Liens on the Prepetition Collateral, and (B) the Carve Out, and shall otherwise be senior to all other security interests in, liens on, or claims against any asset of a Debtor and all rights of payment of all other parties. Other than as set forth herein, the ABL Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or with any lien or security interest previously or hereinafter granted in any of the Cases or any Successor Case (as defined below). The ABL Adequate Protection Liens shall be valid, binding and enforceable against any trustee or other estate representative appointed in any Case, upon the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code (collectively, "<u>Successor Cases</u>") and/or upon the dismissal of any Case or Successor Case. For the avoidance of doubt, the ABL Adequate Protection Liens shall not include any leasehold interests of the Debtors but shall include the proceeds from any sale, termination, or other disposition of any leasehold interests of the Debtors.

(ii)    *Term Loan Adequate Protection Liens.*    Subject to the Carve Out and the Intercreditor Agreement, as adequate-protection for and solely to the extent of the amount of Diminution in Value from and after the Petition Date of its interests in the Prepetition Collateral, the Term Agent, for the benefit of itself and the Term Lenders, is hereby granted, pursuant to sections 361 and 363 of the Bankruptcy Code, valid, binding, enforceable and perfected replacement liens upon and security interests in the ABL Collateral (the "<u>Term Loan Adequate Protection Liens</u>" and, together with the ABL Adequate Protection Liens, the "<u>Adequate Protection Liens</u>"). The Term Loan Adequate Protection Liens shall be junior and subordinate only to (A) the ABL Prepetition Liens on the Prepetition Collateral, (B) the Term Loan Prepetition Liens on the Prepetition Collateral, (C) the ABL Adequate Protection Liens on the Postpetition

Collateral and (D) the Carve Out, and shall otherwise be senior to all other security interests in, liens on, or claims against any asset of a Debtor and all rights of payment of all other parties. Other than as set forth herein, the Term Loan Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or with any lien or security interest previously or hereinafter granted in any of the Cases or any Successor Case. The Term Loan Adequate Protection Liens shall be valid, binding and enforceable against any trustee or other estate representative appointed in any Case or Successor Case and/or upon the dismissal of any Case or Successor Case. For the avoidance of doubt, the Term Loan Adequate Protection Liens shall not include any leasehold interests of the Debtors but shall include the proceeds from any sale, termination, or other disposition of any leasehold interests of the Debtors.

   (b) <u>Section 507(b) Priority Claims</u>.

    (i) *ABL Adequate Protection Superpriority Claim.* Subject only to the Carve Out, as adequate-protection for the Diminution in Value of its interest in the Prepetition Collateral, the ABL Agent, for the benefit of itself and the other ABL Parties, is hereby granted as and to the extent provided by sections 503 and 507(b) of the Bankruptcy Code, an allowed superpriority administrative-expense claim in the Cases and any successor bankruptcy case (the "<u>ABL Adequate Protection Superpriority Claim</u>"). The ABL Adequate Protection Superpriority Claim shall be subordinate to the Carve Out solely to the extent set forth in this Final Order, but otherwise shall have priority over all administrative expense claims, including administrative expenses of the kinds specified in or ordered pursuant to sections 503(b) and 507(b) of the Bankruptcy Code, and unsecured claims against each Debtor and each Estate now existing or hereafter arising, of any kind or nature whatsoever.

    (ii) *Term Loan Adequate Protection Superpriority Claim.* As adequate protection for the Diminution in Value of its interest in the Prepetition Collateral, the Term Agent, for the benefit of itself and the Term Loan Lenders, is hereby granted as and to the extent provided by sections 503 and 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in the Cases and any successor bankruptcy case (the "<u>Term Loan Adequate</u>

Protection Superpriority Claim" and together with the ABL Adequate Protection Superpriority Claim, the "Adequate Protection Superpriority Claims"). The Term Loan Adequate Protection Superpriority Claim shall be subordinate to (A) the Carve Out solely to the extent set forth in this Final Order and (B) the ABL Adequate Protection Superpriority Claim, but otherwise shall have priority over all administrative expense claims, including administrative expenses of the kinds specified in or ordered pursuant to sections 503(b) and 507(b) of the Bankruptcy Code, and unsecured claims against each Debtor and each Estate now existing or hereafter arising, of any kind or nature whatsoever.

(c)     Default Interest.  At all times during the Cases and through entry of this Final Order, as adequate protection, the Secured Prepetition Obligations shall bear interest at the applicable Default Rate (as defined and set forth in the Prepetition Documents), and interest and letter-of-credit fees (if any) pursuant to the ABL Credit Agreement shall be paid to the ABL Agent in cash on a monthly basis.

(d)     Mandatory Paydown of ABL Prepetition Obligations.  To be made (a) in accordance with the Budget and (b) from the proceeds of disposition of ABL Collateral.

(e)     Payment and Review of Lender Fees and Expenses.  As further adequate protection, the Debtors shall pay all fees and expenses under the ABL Loan Documents, including, without limitation, the non-refundable payment to the ABL Agent of the reasonable and documented attorney fees and expenses and any other professional fees and expenses whether incurred before or after the Petition Date and whether incurred in connection with the ABL Loan Documents, the ABL Collateral, or the Cases; provided that the Debtors shall pay all such reasonable fees and expenses within ten (10) calendar days of delivery of a summary statement or invoice for such fees and expenses (it being understood that such statements or invoices shall not be required to be maintained in any particular format, nor shall any such counsel or other professional be required to file any interim or final fee applications with the Court or otherwise seek Court's approval of any such payments) to the Debtors, the U.S. Trustee and the Committee, unless, within such ten (10) calendar day period, the Debtors, the U.S. Trustee or the Committee

serve a written objection upon the requesting party, in which case, the Debtors shall pay only such amounts that are not the subject of any objection and the withheld amount subsequently agreed by the objecting parties or ordered by the Court to be paid. Any and all amounts paid by the Debtors pursuant to this Paragraph 7(f) are deemed permitted uses of Cash Collateral and not subject to the Budget or the Budget Compliance Report. Notwithstanding the foregoing, the Debtors were authorized to pay upon entry of the Interim Order, and are hereby authorized to continue to pay on a final basis, all reasonable and documented fees, costs and out-of-pocket expenses of the ABL Agent incurred on or prior to such date without the need for any professional engaged by the ABL Agent to first deliver a copy of its invoice as provided herein. No attorney, advisor, or other professional to any ABL Agent shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court.

(f)     ABL Indemnity Reserve. Upon the payment in cash to the ABL Agent in the amount of all then outstanding ABL Prepetition Obligations, the Debtors are further authorized and directed to pay to the ABL Agent, for the benefit of the ABL Parties, $250,000 into a noninterest bearing account maintained at JPMorgan Chase Bank, N.A. (the "Prepetition ABL Indemnity Reserve") to secure contingent indemnification, reimbursement, or similar continuing obligations arising under or related to the ABL Loan Documents (the "Prepetition ABL Indemnity Obligations"). The Prepetition ABL Indemnity Reserve shall secure all costs, expenses, and other amounts (including reasonable and documented attorneys' fees) owed to or incurred by the ABL Agent related to the ABL Loan Documents, the ABL Prepetition Obligations, or the ABL Prepetition Liens granted to the ABL Agent, as applicable, whether in these Cases or independently in another forum, court, or venue. The Prepetition ABL Indemnity Obligations shall be secured, and not subject to the Carve Out, by a first lien on the Prepetition ABL Indemnity Reserve and the funds therein and by a lien on the ABL Collateral (subject in all respects to this Final Order). Payments of Prepetition ABL Indemnity Obligations shall be made as and when they arise and paid with the Prepetition ABL Indemnity Reserve, without further notice to or consent from the Debtors, the Committee, or any other parties in interest and without further order of this

Court. The ABL Agent (for itself and on behalf of the other ABL Parties) shall retain and maintain the ABL Prepetition Liens and the ABL Adequate Protection Liens granted to the ABL Agent as security for the amount of any Prepetition ABL Indemnity Obligations not capable of being satisfied from application of the funds on deposit in the Prepetition ABL Indemnity Reserve. The Prepetition ABL Indemnity Reserve shall be released to the Debtors at such time as the ABL Prepetition Obligations are Paid in Full.

8.     Limits on Lender Liability.  Nothing in this Final Order, the ABL Loan Documents, the Term Loan Documents or any other documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the ABL Agent or other ABL Parties or the Term Agent or other Term Parties of any liability for any claims arising from any activities by the Debtors in the operation of their businesses or in connection with the administration of these Cases. The ABL Parties and Term Parties shall not, solely by reason of having made loans under the ABL Loan Documents and Term Loan Documents (respectively), be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.*, as amended, or any similar federal or state statute).  Nothing in this Final Order shall in any way be construed or interpreted to impose or allow the imposition upon the ABL Parties or Term Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors.

9.     Proof of Claim.  Notwithstanding any notice, motion or other order entered by this Court in relation to the establishment of a bar date in any of the Cases or any Successor Case to the contrary, the ABL Agent and Term Agent will not be required to file proofs of claim or requests for approval of administrative expenses in any Case or Successor Case. The acknowledgment by Debtors of the ABL Prepetition Obligations and the Term Loan Prepetition Obligations and the liens, rights, priorities and protections granted to or in favor of the ABL Agent and the Term Agent in respect of the Prepetition Collateral as set forth herein and in the ABL Loan Documents and

Term Loan Documents (respectively) shall be deemed a timely filed proof of claim on behalf of the ABL Agent and the Term Agent (respectively) in each of the Cases or Successor Cases.

10.　　Relief from the Automatic Stay.

(a)　　The automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified to permit (i) the Debtors to implement and perform the terms of this Final Order and (ii) the Debtors to create, and the ABL Agent and Term Agent to perfect, the ABL Adequate Protection Liens, the Term Loan Adequate Protection Liens, and other Liens granted hereunder. The ABL Agent and Term Agent shall not be required to file UCC financing statements or other instruments with any other filing authority to perfect the Liens, including the ABL Adequate Protection Liens, the Term Loan Adequate Protection Liens, granted by this Final Order or to take any other actions to perfect such Liens, which shall be deemed automatically perfected by the docketing of this Final Order by the Clerk of the Court, and deemed to be effective as of the Petition Date. If, however, the ABL Agent or Term Agent shall elect for any reason to file, record or serve any such financing statements or other documents with respect to such Liens, then the Debtors shall execute same upon request and the filing, recording or service thereof (as the case may be) shall be deemed to have been made at the time of the commencement of this Case on the Petition Date.

(b)　　The automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified without further notice, application or order of the Court to the extent necessary to permit the ABL Agent to perform any act authorized or permitted under or by virtue of this Final Order, the ABL Credit Agreement, the other ABL Loan Documents, as applicable, including, without limitation, (i) to implement the use of Cash Collateral authorized by this Final Order, (ii) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the ABL Collateral, including any adequate-protection liens, and (iii) to assess, charge, collect, advance, deduct and receive payments with respect to the ABL Prepetition Obligations, including, without

limitation, all interests, fees, costs and expenses permitted under the ABL Loan Documents, and apply such payments to the ABL Prepetition Obligations.

(c)     In addition, and without limiting the foregoing, upon the occurrence of the Termination Date, and after providing five (5) days (the "Remedies Notice Period") prior written notice to (i) the Court, (ii) counsel for the Debtors, (iii) the Term Agent, (iv) counsel for the Committee, and (v) the U.S. Trustee, and in accordance with the terms of this Final Order, the ABL Agent shall be entitled to an expedited hearing before this Court to occur immediately following the expiration of the Remedies Notice Period in order to obtain relief from the automatic stay provisions of section 362 of the Bankruptcy Code to take any action and exercise all rights and remedies against the ABL Collateral provided under this Final Order, the ABL Loan Documents or applicable law that the ABL Agent may deem appropriate in its sole discretion to proceed against and realize upon the ABL Collateral or any other assets or properties of Debtors' Estates upon which the ABL Agent have been or may hereafter be granted liens or security interests to obtain the full and indefeasible repayment of all Secured Obligations (as defined in the ABL Credit Agreement).   For the avoidance of doubt, the Remedies Notice Period shall run simultaneously from the date that ABL Agent provides any notice to the Debtors, the U.S. Trustee, the Term Agent, and the Committee, that is required pursuant to Paragraph 5 of this Final Order.

11.     Reversal or Modification.  In the event that any or all of the provisions of this Final Order are reversed or modified, the Secured Parties shall be entitled to all of the benefits and protections of sections 363(m) and 364(e) of the Bankruptcy Code.

12.     No Waiver for Failure to Seek Relief.  The failure or delay of the ABL Agent or the Term Agent to seek relief or otherwise exercise any of its rights and remedies under the Interim Order, this Final Order, the ABL Credit Agreement, the Term Loan Credit Agreement, the Intercreditor Agreement, the other Prepetition Documents or applicable law, as the case may be, shall not constitute a waiver of any rights hereunder, thereunder, or otherwise, by the ABL Agent or the Term Agent.

13.     <u>Section 507(b) Reservation</u>.  Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the ABL Agent and the Term Agent (subject to the Intercreditor Agreement), hereunder is insufficient to compensate for any Diminution in Value during the Cases.  Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by the ABL Agent or the Term Agent that the adequate protection granted herein does in fact adequately protect the ABL Agent and the Term Agent against any Diminution in Value of their interests in the Prepetition Collateral (including the Cash Collateral).

14.     <u>Marshalling</u>.  In no event shall the ABL Agent and the Term Agent be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the Prepetition Collateral.

15.     <u>552(b) "Equities of the Case" Waiver</u>.  The ABL Agent and the Term Agent shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the ABL Agent and the Term Agent with respect to proceeds, products, offspring or profits of any of the Prepetition Collateral, as applicable.

16.     <u>506(c) Claims</u>.  No costs or expenses of administration which have or may be incurred in the Cases shall be charged against the ABL Agent and the Term Agent, their claims or the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code without the prior written consent of the ABL Agent or the Term Agent, as applicable, and no such consent shall be implied from any other action, inaction or acquiescence by the ABL Agent or the Term Agent, as applicable.

17.     <u>Limitation on Use of Collateral</u>.  The Cash Collateral shall not, directly or indirectly, be used to pay administrative expenses of the Debtors and or the Estates except for those operating expenses (including the statutorily required fees payable to the Office of the United States Trustee pursuant to 28 U.S.C. §1930 and any interest due thereon) that are set forth in the Budget or with the prior written consent (which writing may be in e-mail) of the ABL Agent.  The

Cash Collateral and the Carve Out may not be used in connection with or to finance in any way: (a) any action, suit, arbitration, proceeding, application, motion or other litigation of any type (i) for the payment of any services rendered by the professionals retained by any Debtor or Committee, or other representative of any Estate, in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment, determination, declaration or similar relief invalidating, setting aside, avoiding or subordinating, in whole or in part, any ABL Prepetition Liens or ABL Prepetition Obligations, (ii) for monetary, injunctive or other affirmative relief against the ABL Agent or the ABL Lenders, or (iii) preventing, hindering or otherwise delaying the exercise by the ABL Agent, the ABL Lenders of any rights under this Final Order; (b) objecting to or challenging in any way the claims, liens, or interests held by or on behalf of the ABL Agent; (c) asserting, commencing or prosecuting any claims or causes of action whatsoever, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against the ABL Agent or the ABL Lenders; or (d) prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the ABL Prepetition Liens or the ABL Prepetition Obligations or any other rights or interest of the ABL Agent, the ABL Lenders; provided, that up to an aggregate amount of $200,000 of (x) the proceeds of the Prepetition Collateral (including Cash Collateral) or (y) the Carve Out may be used by the Committee during the Challenge Period to investigate (but not to prosecute or challenge) the claims and liens of the ABL Agent and the Term Agent and other potential claims, counterclaims, causes of action or defenses against the ABL Agent, the ABL Lenders, the Term Agent, the Term Lenders and/or the other Secured Parties in their respective capacities as such.

18. **Effect of Debtors' Stipulations on Third Parties**.

(a) In accordance with Paragraph B of this Final Order, the Committee has determined there is an insufficient basis to assert any ABL Challenge with respect to the ABL Agent, the ABL Lenders, all other ABL Parties and any affiliates thereof, including J.P. Morgan

Securities, LLC, in its capacity as the Debtors' prepetition investment banker. As a result the Challenge Period has expired solely with respect to any ABL Challenge and each stipulation, admission, and agreement contained in this Final Order solely with respect to the ABL Agent, the ABL Lenders or the other ABL Parties, the ABL Facility, the ABL Prepetition Obligations and the ABL Loan Documents shall be binding upon the Debtors, their Estates and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors) under all circumstances and for all purposes, and the Debtors are deemed to have irrevocably waived and relinquished all such ABL Challenges as of the Petition Date.

(b)     Nothing in this Final Order shall prejudice the rights of the Committee, solely in accordance with the provisions of this Paragraph 18, to assert claims against the Term Parties, on behalf of the Debtors or the Debtors' creditors or to otherwise challenge the Debtors' Stipulations, including, but not limited to those in relation to (i) the validity, extent, priority, or perfection of the security interests, and liens of the Term Parties, (ii) the validity, allowance, priority, or amount of the Term Loan Prepetition Obligations, or (iii) any liability of the Term Parties with respect to anything arising from the Term Loan Documents. Notwithstanding the immediately preceding sentence, the Committee, or a trustee as discussed below, must commence an adversary proceeding raising such claim, objection, or challenge, including, without limitation, any claim or cause of action against the Term Agent, the Term Lenders, or the other Term Parties (each, a "Challenge") no later than (i) July 31, 2023; and (ii) with respect to any chapter 11 trustee appointed in the Cases, or any chapter 7 trustee appointed in any Successor Case no later than the date that is fourteen (14) days after the appointment of such trustee (collectively, the "Challenge Period"). The Challenge Period may only be extended with the written consent of the Term Agent prior to the expiration of the Challenge Period. Only those parties in interest who commence a Challenge within the Challenge Period may prosecute such Challenge. As to (x) any parties in interest, including any Committee, who fail to file a Challenge within the Challenge Period, or if any such Challenge is filed and overruled or otherwise finally resolved or adjudicated in favor of the Term Agent, or (y) any and all matters that are not expressly the subject of a timely Challenge:

(1) any and all such Challenges by any party (including, without limitation, the Committee, any chapter 11 trustee, any examiner or any other estate representative appointed in the Debtors' Cases, or any chapter 7 trustee, any examiner or any other estate representative appointed in any Successor Case), shall be deemed to be forever waived and barred, (2) all of the findings, Debtors' Stipulations, waivers, releases, affirmations, and other stipulations as to the priority, extent, and validity as to the claims, liens, and interests of the Term Parties, as applicable, shall be of full force and effect and forever binding upon the Debtors' Estates and all creditors, interest holders, and other parties in interest in the Cases and any Successor Cases, and (3) any and all claims or causes of action against the Term Parties relating in any way to the Term Loan Documents, Term Loan Prepetition Obligations, and Term Loan Prepetition Liens, as applicable, shall be released by the Debtors' Estates, all creditors, interest holders, and other parties in interest in the Cases and any Successor Cases.

(c)     The Committee is hereby granted standing and authority to commence a Challenge on behalf of the Debtors and their Estates notwithstanding any issue regarding whether creditors have the ability to file derivative suits on behalf of any Debtor that is a limited liability company.

(d)     The Committee ABL Investigation has concluded and the Challenge Period is deemed to have expired with respect to all ABL Challenge Parties.  Any claim, challenge, or related matter or proceeding against any ABL Challenge Party (as set forth in paragraph B above) is therefore barred.

19.     Binding Effect.  This Final Order shall be binding upon and inure to the benefit of the ABL Agent (for itself and on behalf of the ABL Lenders), the Term Agent (for itself and on behalf of the Term Lenders) and the Debtors and their respective successors and assigns, including, without any limitation, any trustee, responsible officer, examiner, estate administrator or representative, or similar person appointed in a case for the Debtors under any chapter of the Bankruptcy Code.  No rights are entered under this Final Order for the benefit of any creditor of

the Debtors, any other party in interest in the Cases, or any other person or entities, or any direct, indirect or incidental beneficiaries thereof.

20. _Limitation of Liability_. In permitting the use of the Prepetition Collateral or in exercising any rights or remedies as and when permitted pursuant to this Final Order, upon entry of this Final Order, neither the ABL Agent nor any ABL Party nor the Term Agent nor any Term Party shall be deemed to be in control of the operations of the Debtors as a direct result of the entry of this Final Order. Furthermore, nothing in this Final Order shall in any way be construed or interpreted to impose or allow the imposition upon the ABL Agent or the other ABL Parties or the Term Agent or the other Term Parties of any liability for any claims arising from the prepetition or post-petition activities of any of the Debtors and their respective affiliates (as defined in section 101(2) of the Bankruptcy Code).

21. _Effectiveness_. The terms and conditions of this Final Order shall be (i) effective and immediately enforceable upon its entry by the Clerk of the Court notwithstanding any potential application of Bankruptcy Rule 6004(h), 7062, 9014 or otherwise; and (ii) not be stayed absent (a) an application by a party in interest for such stay in conformance with such Bankruptcy Rule 8007, and (b) a hearing upon notice to the Notice Parties.

22. _Survival_. The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (a) confirming any plan of reorganization in any of the Cases, (b) converting any of the Cases to a case under chapter 7 of the Bankruptcy Code, (c) dismissing any of the Cases or Successor Cases, or (d) pursuant to which this Court abstains from hearing any of the Cases or Successor Cases; _provided_, _that_ in the event there is later entered any order providing for either the conversion or dismissal of any one or more of the Cases, such order(s) shall make express provision, among other things, for the survival and continuing force and effect of the terms and provisions of this Final Order notwithstanding such conversion or dismissal. The terms and provisions of this Final Order, as well as the Adequate Protection Superpriority Claims, the Adequate Protection Liens, and all other claims and liens (if any) granted by this Final Order, shall (a) continue in this or any other superseding case under the Bankruptcy

Code, (b) be valid and binding on all parties in interest, including, without limitation, any Committee, chapter 11 trustee, examiner or chapter 7 trustee, and (c) continue, notwithstanding any dismissal of any Case or Successor Case (and any such order of dismissal shall so provide), and such claims and liens shall maintain their priority as provided by this Final Order until (x) in the case of the ABL Parties, the ABL Prepetition Obligations are Paid in Full and (y) in the case of the Term Parties, the Term Loan Prepetition Obligations are Paid in Full.

23. <u>Discharge Waiver</u>. Upon entry of this Final Order, the Debtors expressly stipulate, and the Court finds and adjudicates that, neither the Adequate Protection Superpriority Claims nor the Adequate Protection Liens shall be discharged by the entry of an order confirming any plan of reorganization, notwithstanding section 1142(d) of the Bankruptcy Code, unless (i) the order is entered with the prior written consent of the ABL Agent or the Term Agent, as applicable, or (ii) the Adequate Protection Superpriority Claims have been Paid in Full on or before the effective date of such plan.

24. <u>Rights Preserved</u>. Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the ABL Agent's or Term Agent's right to seek any other relief in respect of the Debtors (including the right to seek additional adequate protection) or (b) any rights of the ABL Agent or Term Agent under the Bankruptcy Code or under non-bankruptcy law, including the right to (i) request modification of the automatic stay pursuant to section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Cases or Successor Cases, conversion of any of the Cases to cases under chapter 7 of the Bankruptcy Code, or appointment of a chapter 11 trustee or an examiner (with or without expanded powers), (iii) propose a chapter 11 plan or plans of reorganization, subject to section 1121 of the Bankruptcy Code, or (iv) consent in writing prior to the sale of all or any portion of the ABL Collateral outside the ordinary course of the Debtors' business (and no such consent shall be implied or construed by any action or inaction by either the ABL Agent or Term Agent). Other than as expressly set forth in this Final Order, any other rights, claims or privileges (whether legal, equitable or otherwise) of the ABL Agent and Term Agent are preserved.

25. <u>Application of Proceeds</u>. All proceeds of the ABL Collateral received by the ABL Agent, and any other amounts or payments received by the ABL Agent in respect of the ABL Prepetition Obligations, may be applied or deemed to be applied by the ABL Agent in such manner and priority as the ABL Agent may determine in its sole discretion, in accordance with this Final Order, the ABL Loan Documents, and the Intercreditor Agreement. Without limiting the generality of the foregoing, subject to Paragraph 7(e) herein to the extent applicable, the Debtors are authorized without further order of this Court to pay or reimburse the ABL Agent for future costs and expenses, including, without limitation, all professional fees, consultant fees and legal fees and expenses paid or incurred by the ABL Agent as provided in the Interim Order, this Final Order and the ABL Loan Documents, all of which shall be and are included as part of the principal amount of the ABL Prepetition Obligations and secured by the ABL Collateral.

26. <u>Controlling Effect of this Final Order</u>. To the extent any provision of this Final Order conflicts or is inconsistent with any provision of the Motion or the Interim Order, the provisions of this Final Order shall control to the extent of such conflict.

27. <u>Retention of Jurisdiction</u>. The Court has and will retain jurisdiction to enforce this Final Order in accordance with its terms and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Final Order.

**Dated: May 9th, 2023**
**Wilmington, Delaware**

          **CRAIG T. GOLDBLATT**
          **UNITED STATES BANKRUPTCY JUDGE**